**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMSC-020

Filing Date: April 28, 2009

Docket No. 30,486

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

JOSE CHAVARRIA,

      Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

Hugh W. Dangler, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**MAES, Justice.**

**{1}**    Jose Chavarria (Defendant) pleaded guilty to one count of murder in the first degree with a firearm contrary to NMSA 1978, Sections 30-2-1 (1994) and 31-18-16 (1993). The trial court accepted Defendant's guilty plea, entered a judgment of conviction, and sentenced

1

Defendant to life imprisonment, the maximum penalty for a serious youthful offender.[1] *See* NMSA 1978, § 31-18-14(A) (1993). On appeal, Defendant claims that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Federal Constitution and Article II, Section 13 of the New Mexico Constitution. We dismiss Defendant's appeal and conclude that Defendant waived his right to challenge the constitutionality of his sentence on appeal.

## FACTS AND PROCEDURAL HISTORY

{2}    The record reflects the following facts. Defendant, Thomas Aragon, Jeff Goebel, and Ray Vargas decided to murder Tomasa Robles (Victim) because "the word[] on the street[]" was that "she was a rat." On March 2, 2005, approximately three months prior to Defendant's eighteenth birthday, Goebel, Defendant, and Aragon took Victim "for a cruise." They parked their vehicles on the side of Darby Road in Roswell, New Mexico where Defendant and Goebel fatally shot Victim in the neck and head with a .38 special snub-nosed revolver.

{3}    Defendant subsequently confessed to his involvement in the murder, and a grand jury indicted Defendant on the following charges: (1) murder in the first degree with a firearm contrary to Sections 30-2-1, 31-18-16, and NMSA, Section 30-1-13 (1972); (2) kidnapping in the first degree contrary to NMSA 1978, Sections 30-4-1 (2003) and 30-1-13; (3) conspiracy to commit murder and/or kidnapping contrary to NMSA 1978, Sections 30-28-2 (1979), 30-2-1, and 30-4-1; and (4) tampering with evidence contrary to NMSA 1978, Sections 30-22-5 (2003) and 30-1-13. Defendant and the State subsequently entered into a plea and disposition agreement, whereby Defendant agreed to plead guilty to the crime of murder in the first degree with a firearm, and the State agreed to dismiss the remaining counts of the indictment. The plea and disposition agreement contained "no agreements as to sentencing" and explicitly stated that the maximum penalty for murder in the first degree as a serious youthful offender is life imprisonment. Pursuant to the plea and disposition agreement, Defendant expressly waived **any and all** motions, defenses, objections or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. The defendant waives the right to appeal the conviction that results from the entry of this plea agreement.

{4}    The trial court canvassed Defendant to ensure that his guilty plea was knowing, intelligent, and voluntary. With respect to Defendant's potential sentence , the record reflects the following colloquy:

---

[1]A "serious youthful offender" is "an individual fifteen to eighteen years of age who is charged with and indicted or bound over for trial for first degree murder." NMSA 1978, § 31-18-15.2(A) (1996).

THE COURT: Mr. Chavarria, do you understand that the law provides a range of sentence potentials in regard to the charge of murder in the first degree with a firearm?

[Defendant]: Yes, your Honor.

THE COURT: I understand that this [plea and disposition agreement] anticipates that you - - anticipates treating you as a serious youthful offender in regard to first degree murder a capital felony; do you understand?

[Defendant]: Yes, your Honor. I sure do.

THE COURT: So you understand that the potential could be anything from probation to life in prison?

[Defendant]: Yes, your Honor.

THE COURT: Okay. Do you understand that the law provides that that range is the least possible thing that can happen that is probation the least consequential thing to the most severe that's life in prison; do you understand that?

[Defendant] Yes, sir, your Honor, I do.

. . . .

THE COURT: So Mr. Chavarria, do you understand that there is this range of things that can happen in regard to sentencing?

[Defendant]: Yes, sir, your Honor, I do.

THE COURT: You do understand that?

[Defendant]: Yes, sir.

THE COURT: Have you talked about that with [your counsel]?

[Defendant]: Yes, sir, I have.

THE COURT: Okay. Mr. Chavarria, have you thought about the fact that in regard to this plea and disposition agreement, there is no promise, there is no guarantee, there is no indication at all what the court might do in terms of the sentence?

[Defendant]: No, sir. Excuse me?

THE COURT: Do you understand that the sentence could be - - I could sentence you anywhere in that range from probation all the way to life in prison?

[Defendant]: Yes, your Honor, I understand.

Thereafter, the trial court accepted Defendant's guilty plea.

{5} At his sentencing hearing, Defendant submitted evidence in mitigation of his

3

sentence. Defendant proffered expert testimony from Dr. George Edwin Davis, a child adolescent psychiatrist, and Dr. Christine Johnson, a forensic psychologist, with respect to adolescent brain development. Dr. Davis testified that the frontal lobe of the brain, which controls executive functions such as judgment, planning and impulse control, is not fully developed in adolescents. This underdevelopment leads to "normal adolescent behavior," such as impulsivity, bad judgment, moodiness, mood liability, changeability, thrill seeking, and a susceptibility to peer pressure. Dr. Davis explained that the "decisions that adolescents make and behaviors that they exhibit are not very fixed or permanent and are still quite open to adjustment to the change in the treatment and to simple development actually." Accordingly, Dr. Davis testified that, in his opinion, adolescents "should not be punished the same as an adult" for criminal behavior. Dr. Johnson agreed with Dr. Davis' opinion, explaining that "adolescents are not in their final capacity for decision making" and that this lack of finality should be treated "as a mitigating factor in sentencing."

{6}     Both Drs. Davis and Johnson testified as to other mitigating factors unique to Defendant that could have impaired Defendant's judgment and impulse control. These factors included: (1) the physical abuse and neglect that Defendant suffered as a child, including repeated head trauma; (2) Defendant's learning disabilities and low intelligence quotient; and (3) Defendant's history of drug and alcohol abuse. Additionally, both Drs. Davis and Johnson testified that, since his commitment to the Youth Diagnostic and Detention Center (YDDC), Defendant has responded well to treatment and has shown positive behavioral changes.

{7}     At the conclusion of the hearing, Defendant asked the trial court to impose a fifteen-year sentence, the first year to run concurrent with his detention as a juvenile offender at the YDDC, followed by fourteen years of incarceration as an adult. The State asked the trial court to treat Defendant as an adult offender and to impose the maximum sentence of life imprisonment. The trial court sentenced Defendant to life imprisonment in the adult correctional system, stating,

> I have heard today about the adolescent mind. I've heard about a lot of drugs, use and trafficking as well, by the defendant.
>
> I've heard, [defense counsel,] what you say when you say that he was a puppet in the hands of Jeff Goebel and Ray Vargas. But the fact is that [Defendant] killed a young woman in cold blood. And I have to think that Mr. Goebel and Mr. Vargas may well not have done that. That it took [Defendant] to carry out the cold-blooded murder.
>
> When I heard [Defendant] testify, I realized that this man knows exactly what he's doing. He has a very good grasp. I believe that Dr. Davis was right when he said that [Defendant] understands the consequences of his behavior and his presentment.

4

> I believe that I owe it to the victim's family, to this community, to see that a cold-blooded killer is placed behind bars for the rest of his life.

**{8}** Defendant is now before this Court on direct appeal. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court."); *accord* Rule 12-102(A)(1) NMRA. Defendant claims that, under the facts and circumstances of this case, a sentence of life imprisonment constitutes cruel and unusual punishment in violation to the Eighth Amendment to the Federal Constitution and Article II, Section 13 of the New Mexico Constitution. The State's response is twofold: first, the State claims that Defendant waived his right to appeal, and second, the State claims that Defendant's sentence is proportional to the crime committed and, therefore, does not violate the prohibition against cruel and unusual punishment.

**DISCUSSION**

**{9}** We first address whether Defendant waived his right to challenge the constitutionality of his sentence on appeal. Article VI, Section 2 of the New Mexico Constitution provides that "an aggrieved party shall have an absolute right to one appeal." "However, a plea of guilty or nolo contendere, when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal." *State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994). "Thus, a voluntary guilty plea ordinarily constitutes a waiver of the defendant's right to appeal his conviction on other than jurisdictional grounds." *Id.*; *see also State v. Trujillo*, 2007-NMSC-017, ¶ 8, 141 N.M. 451, 157 P.3d 16 ("[A] plea of guilty does not waive jurisdictional errors."); Rule 12-216(B) NMRA (providing that appellate courts may review jurisdictional questions raised for the first time on appeal).

**{10}** In the present case, Defendant entered an unconditional plea of guilty and, therefore, he did not reserve the right to raise his cruel and unusual punishment claim on appeal. Moreover, Defendant does not challenge the validity of his guilty plea. Accordingly, our review is limited to jurisdictional errors.

**{11}** Questions regarding subject matter jurisdiction "are questions of law which are subject to de novo review." *State v. Montoya*, 2008-NMSC-043, ¶ 9, 144 N.M. 458, 188 P.3d 1209. "Subject matter jurisdiction is the power to adjudicate the general questions involved . . . and is not dependent upon the state of facts which may appear in a particular case . . . ." *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 138, 899 P.2d 576, 581 (1995). "The only relevant inquiry in determining whether the court has subject matter jurisdiction is to ask whether [the matter before the court] falls within the general scope of authority conferred upon such court by the constitution or statute." *Id.* (internal quotation marks and citation omitted).

5

**{12}** "A trial court's power to sentence is derived exclusively from statute." *State v. Martinez*, 1998-NMSC-023, ¶ 12, 126 N.M. 39, 966 P.2d 747; *accord State v. Mabry*, 96 N.M. 317, 321, 630 P.2d 269, 273 (1981) ("It has long been recognized in this state that it is solely within the province of the Legislature to establish penalties for criminal behavior."). The Criminal Sentencing Act (the Act), NMSA 1978, §§ 31-18-12 to -26 (1977, as amended through 2003), confers authority on the trial court to impose a criminal sentence in accordance with its provisions. *See, e.g.*, *State v. Lucero*, 2007-NMSC-041, ¶¶ 9-11, 142 N.M. 102, 163 P.3d 489; *Trujillo*, 2007-NMSC-017, ¶ 8; *see also* § 31-18-13(A) ("Unless otherwise provided in this section, all persons convicted of a crime under the laws of New Mexico shall be sentenced in accordance with the provisions of the Criminal Sentencing Act . . . ."). Accordingly, we must determine whether Defendant's sentence of life imprisonment was authorized by the Act.

**{13}** Defendant was seventeen-years old at the time of the murder and, therefore, he qualified as a "serious youthful offender." *See* § 31-18-15.2(A); *see also supra* footnote 1. When a serious youthful offender is found guilty of the crime of first degree murder, the trial court "may sentence the offender to less than, but not exceeding, the mandatory term for an adult." NMSA 1978, Section 31-18-15.3(D); *see also* § 31-18-13(A) (providing that "a person sentenced as a serious youthful offender . . . may be sentenced to less than the basic or mandatory sentence prescribed by the Criminal Sentencing Act."). The mandatory sentence for murder in the first degree with a firearm, a capital felony, is "life imprisonment or death," provided that if the defendant was under the age of eighteen at the time of the murder, "he may be sentenced to life imprisonment but shall not be punished by death." Section 31-18-14(A). Because Defendant's sentence of life imprisonment was expressly authorized by the Act, we conclude that the trial court did not exceed its sentencing jurisdiction.

**{14}** Defendant claims, however, that pursuant to *State v. Sinyard*, 100 N.M. 694, 695, 675 P.2d 426, 427 (Ct. App. 1983), an unconstitutional sentence is an illegal sentence that may be challenged for the first time on appeal. We conclude that *Sinyard* is distinguishable from the present case because, in *Sinyard*, the defendant did not claim that his sentence was a violation of the prohibition against cruel and unusual punishment, but, rather, claimed only that his sentence was not authorized by the applicable statute. *Id.*; *see also State v. Trujillo*, 2002-NMSC-005, ¶ 64, 131 N.M. 709, 42 P.3d 814 (distinguishing *Sinyard* on this basis). In *Trujillo*, we expressly held that a sentence authorized by statute, but claimed to be cruel and unusual punishment under the state and federal constitutions, does not implicate the jurisdiction of the sentencing court and, therefore, may not be raised for the first time on appeal. *Trujillo*, 2002-NMSC-005, ¶ 64 n.4; *see also State v. Burdex*, 100 N.M. 197, 201, 668 P.2d 313, 317 (Ct. App. 1983) (holding that a cruel and unusual punishment claim is not jurisdictional and, therefore, may not be raised for the first time on appeal). Because Defendant's sentence was authorized by statute, Defendant's cruel and unusual punishment claim may not be raised for the first time on appeal.

**{15}** Lastly, Defendant argues that we should review the merits of his unpreserved cruel

6

and unusual punishment claim under the fundamental error doctrine. Fundamental error is an exception to the general rule requiring error to be preserved. *See* Rule 12-216. Although we occasionally have equated failure to preserve error, also known as forfeiture, and waiver of error, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). As the United States Supreme Court observed in *Olano,* when examining the "plain error" doctrine under Rule 52(b) of the Federal Rules of Criminal Procedure,[2]

> [d]eviation from a legal rule is "error" unless the rule has been waived. For example, a defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11 cannot have his conviction vacated by court of appeals on the grounds that he ought to have had a trial. Because the right to trial is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not "error."

*Id.* at 732-33*; see also id.* at 733-34 ("If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an "error" within the meaning of Rule 52(b) despite the absence of a timely objection."). Likewise, we conclude that there is no fundamental error if the defendant has affirmatively waived, as opposed to simply forfeited, the constitutional right at issue. We caution, however, that, "[w]hether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano*, 507 U.S. at 733.

**{16}** As previously explained, the constitutional right to appeal is waivable, and a defendant who knowingly, intelligently, and voluntarily pleads guilty, waives the right to appeal his conviction and sentence. Because Defendant does not challenge the validity of his guilty plea, we conclude that Defendant waived his right to challenge the constitutionality of his sentence on appeal. Accordingly, there is no fundamental error necessitating reversal of Defendant's conviction and sentence. We therefore do not reach the merits of Defendant's cruel and unusual punishment claim.

**{17}** We note that a defendant can enter a conditional plea of guilty and reserve the right to challenge the constitutionality of his sentence on appeal. *See* Rule 5-304(A)(2) NMRA;

---

[2]Rule 52(b) of the Federal Rules of Criminal Procedure provides, in relevant part, that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

*Hodge*, 118 N.M. at 416, 882 P.2d at 7 (holding that conditional guilty pleas are valid when entered into in accordance with certain standards). Alternatively, following the imposition of sentence, a defendant may be eligible to file: (1) a post-judgment motion in the trial court seeking to correct or modify an allegedly illegal sentence, *see* Rule 5-801 NMRA; (2) a writ of habeas corpus on the grounds that his sentence is "illegal or in excess of the maximum authorized by law," *see* Rule 5-802(A) NMRA; (3) or a post-conviction motion on the grounds that "the sentence was imposed in violation of the constitution of the United States, or of the constitution or laws of New Mexico." NMSA 1978, § 31-11-6 (1966). Defendant, however, did not pursue any of these alternative avenues of relief.

**CONCLUSION**

**{18}** We conclude that Defendant waived his right to challenge the constitutionality of his sentence on appeal. Accordingly, we dismiss Defendant's appeal.

**{19}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Chavarria*, No. 30,846**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-DA | Dismissal of Appeal |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CU | Cruel and Unusual Punishment |
| CT-RA | Right to Appeal |
| CT-WR | Waiver of Rights |

**CL**                 **CRIMINAL LAW**
CL-MU            Murder

**CA**                 **CRIMINAL PROCEDURE**
CA-GP            Guilty Plea