# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 14, 2017</u>

**NO. 34,792**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**BILL TURNER,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**_____OPINION**

**SUTIN, Judge.**

{1}     Defendant Bill Turner pleaded guilty to 13 counts of securities fraud, contrary to NMSA 1978, Section 58-13C-501 (2009), and one count of conspiracy to commit securities fraud, contrary to NMSA 1978, Section 30-28-2 (1979) and Section 58-13C-501. After failing to pay any restitution to his victim in the ten months following his guilty plea, Defendant was sentenced to a total period of incarceration of ten years, less 182 days for pre-sentence incarceration credit, plus two years of parole to run concurrently with five years of supervised probation. On appeal, he argues that (1) the district court abused its discretion when it refused to permit Defendant to withdraw his guilty plea on the ground that the plea was involuntary because he was denied effective assistance of counsel and because the plea was coerced, and (2) the district court abused its discretion when it refused to grant his requests for continuance of his restitution and sentencing hearings and proceeded to sentence him. For the reasons outlined in this opinion, we affirm.

**BACKGROUND**

{2}     Defendant was indicted on 211 counts, including 52 counts of securities fraud, 52 counts of prohibited conduct in providing investment advice, 52 counts of fraud,[1]

---

[1] Count 165 is identified as a "forgery" count but uses the "fraud" count language.

52 counts of forgery, two counts of theft of identity, and one count of conspiracy to commit securities fraud. Following Defendant's plea of not guilty, the State filed a motion to set conditions of release. After a hearing on December 4, 2013 on that motion, the district court ordered a bond study and set standard conditions pending the results of the study.

{3}    On January 10, 2014, the district court again considered Defendant's conditions of release. The State argued that the court should follow the recommendation given by the Probation and Parole Department in the pre-release report and place Defendant on a no-bond hold. The State highlighted the crimes with which Defendant was charged, the known and unknown facts about Defendant's alleged scheme, the impact on the victim, and the potential financial resources of Defendant and Defendant's extended family. The State argued that it did not have a good idea of the financial resources available to Defendant because he was hiding needed information and also argued that a no-bond hold was appropriate pending receipt of that information. In response, Defendant highlighted Defendant's connection to his community, his compliance with terms and conditions of release to date, and the fact that he had not fled despite facing serious prison time. The district court expressed its concern that Defendant could flee given the prison time faced. The court imposed a $250,000 cash only bond and ordered that if Defendant got released

on that bond, he must surrender his passport and could only travel to a limited number of counties in New Mexico. Defendant was then arrested and detained at the Lincoln County Detention Center (LCDC).

{4}     On February 27, 2014, Defendant moved to modify his conditions of release. The motion to modify stated that Defendant had a documented history of physical disabilities that required timely issuance of medications, that he would not leave New Mexico, that he was a life-long resident of Otero County and was not a flight risk, that he had no prior convictions, and that his father-in-law was willing to place his property with the State as security to assure Defendant's appearance.

{5}     During the hearing on Defendant's motion to modify the conditions of release, defense counsel again informed the court that Defendant's father-in-law had agreed to put up his ranch as a property surety to assure Defendant's appearance in this matter. Defense counsel reiterated Defendant's ties to the community, informed the district court that Defendant had health problems that were not being attended to at LCDC and asserted that Defendant was not a flight risk. Defense counsel stated that the property bond (which would be connected to a piece of property that could be worth in excess of one million dollars) would assure Defendant's appearance. The State responded that they had found six bank accounts, and they were contemplating filing money laundering charges against Defendant. The State argued that the

evidence against Defendant was "overwhelming," that it would convict him of every count with which he was charged, and that the cash bond was appropriate given the circumstances and the impact on the victim. The State represented that part of the logic in imposing the $250,000 cash bond was so that there was money available should restitution be ordered later in the proceedings. The court indicated that the case appeared strong and that the bond as previously ordered would remain.

{6} After Defendant's failed attempt to modify the conditions of his release, Defendant, pro se, filed a motion for appointment of new counsel. The district court granted his motion, and on June 28, 2014, Molly Kicklighter with the Office of the Public Defender entered her appearance on behalf of Defendant and filed a motion to review conditions of release.

{7} On July 9, 2014, Defendant changed his plea and entered a plea and disposition agreement (the agreement) wherein he pleaded guilty to 13 counts of securities fraud and one count of conspiracy to commit securities fraud. As part of the agreement, the parties agreed that the district court would conduct a restitution hearing and that if Defendant paid the court-determined restitution amount in full prior to sentencing, the State would agree to an incarceration cap of twenty years. However, if Defendant did not pay restitution in full before sentencing, Defendant agreed to serve no less than five years and no more than thirty years of incarceration. Defendant would be

released pending the restitution hearing and sentencing in order to begin making arrangements to pay restitution.

{8}     During the July 9, 2014 hearing on Defendant's change of plea, Defendant confirmed that he signed the plea agreement, he had reviewed it with his attorney before signing, and he understood what the document said. The district court went through the plea colloquy, during which it asked a number of questions to assure that the plea was made "knowingly, voluntarily, and intelligently." The court confirmed that Defendant understood that he could face up to forty and one-half years of incarceration under the plea agreement and could be fined up to $70,000. Defendant indicated that part of the reason for entering the plea was to have the remaining charges dismissed. The court informed Defendant that as part of the sentencing agreement, a restitution hearing would be held to determine how much money was owed to the victim, that the State alleged that approximately $215,000 was owed to the victim, and that if Defendant paid restitution in full prior to sentencing, the parties had agreed to an incarceration cap of twenty years. Defendant indicated that he understood that in entering his plea he was waiving any defenses in his case and was waiving his right to appeal. Defendant also stated that he understood that if the court agreed to accept Defendant's plea, he would not be permitted to withdraw that plea. When asked whether "anybody made any promises to [him] to get [him] to do this"

or whether "anybody threatened [him] to do this" Defendant responded, "No, ma'am." Defense counsel stated to the district court that she was not aware of any reason why the court should not accept the plea as a knowing, voluntary, and intelligent act.

{9} After the plea colloquy, and while the parties discussed on the record the timing of the restitution hearing, defense counsel expressed to the court that the Office of the Public Defender was extremely short-staffed and requested that a restitution hearing not take place until September 2014. The court approved the plea and disposition agreement, and in relevant part, it indicated that "the plea [was] voluntary and not the result of force, threats or promises other than a plea agreement." That same day, the court entered a release order.

{10} The day before the August 2014 restitution hearing was set to occur, the court entered a stipulated order for continuance of that hearing because Defendant needed more time to prepare. On November 6, 2014, Kicklighter filed a notice of inability to provide competent representation, request for expedited hearing, and motion to withdraw from representation. Kicklighter apparently filed similar motions in all of her Twelfth Judicial District cases and filed a single "mass memo" in support of all those motions. In her memo, Kicklighter addressed caseload standards, argued that her caseload was unreasonable, and indicated that with her current caseload she was

6

unable to effectively represent her clients. The State responded and filed a cross-motion for entry of an order disqualifying Kicklighter and for an order to show cause as to why the "Chief Public Defender and District Defender should not be held in contempt."

{11} On December 5, 2014, while Kicklighter's motion to withdraw was pending, but before she filed her memo in support of that motion, the district court held the restitution hearing in Defendant's case. During the hearing, Kicklighter requested a continuance. Kicklighter stated that she needed a continuance because she had not had "time to really even understand" the restitution figures provided to her by the State. Kicklighter admitted that she should have retained a forensic accountant but had not yet done so. The State argued that the restitution hearing should not be continued because it had a witness from Texas, who had traveled for the purpose of testifying, and that the hearing had already been continued once before. The State also argued that the hearing needed to happen because the plea agreement contemplated a longer sentence should Defendant fail to pay full restitution by the time of sentencing, which was set in January 2015.

{12} The district court suggested that the State conduct direct examination and that Defendant be permitted to cross-examine the witnesses by phone a week later. When discussing possible dates for a continuance, Kicklighter stated to the court that

7

Defendant's case was the reason she ended up "doing anything in [Lincoln] county ever," that she had too many cases, and that she had moved to withdraw. In Kicklighter's opinion she had been ineffective, Defendant needed the restitution hearing done right, and she had not handled the case correctly. The court ultimately allowed the State's witnesses to testify, and defense counsel reserved cross-examination for the continued hearing to take place on January 9, 2015.

{13} On December 29, 2014, Mario Torrez, newly appointed District Public Defender, entered an appearance on behalf of Defendant. Two days before Defendant's restitution hearing was set to continue in January 2015, Torrez moved to again continue the restitution hearing. In support of his motion, Torrez stated that he requested additional time to review the case and that he had a conflict on the day of the hearing. On January 8, 2015, Torrez filed a notice of withdrawal of Kicklighter's notice and indicated that there had been no ineffective assistance on any of her cases (including Defendant's case) and that he has entered his appearance in all of the at-issue cases.

{14} On January 9, 2015, the district court agreed to continue the restitution hearing until January 21, 2015, and the sentencing hearing for "maybe thirty days," but only if Defendant paid at least $50,000 in restitution by January 21, 2015. The court stated

that if Defendant failed to make said payment, sentencing would take place on January 21, 2015.

{15} The district court held a hearing on Kicklighter's motion to withdraw on January 10, 2015. During the hearing, the public defender argued that there had been no specific showing of ineffective assistance on any of Kicklighter's cases and that it was inappropriate to hear all of the motions at once. Torrez, Kicklighter's supervisor, testified that Kicklighter never said she was ineffective on specific cases, confirmed that the Office of the Public Defender had hired another attorney, and stated that he had entered his appearance in the at-issue cases to help ensure that Kicklighter's clients received effective assistance. Kicklighter testified that she had not yet done individual analyses on her cases to determine how her representation was ineffective in each specific case, but believed that she could articulate ineffectiveness on every case if given the opportunity at a later date. Ultimately Kicklighter was not allowed to withdraw on the cases in which she filed her motion, but the court indicated it would permit additional counsel to work those cases as co-counsel, and it would not require Kicklighter to personally appear at hearings in those cases.

{16} The restitution hearing was re-set for January 21, 2015, but on January 20, 2015, the State moved to continue the hearing so that the victim could testify. The hearing was re-set for April 17, 2015 to accommodate the State's request.

9

{17} After a reassignment of Defendant's case within the Office of the Public Defender in February 2015, Defendant retained W. Chris Nedbalek in March 2015 to represent him. On April 13, 2015, four days before the continued restitution hearing was scheduled to take place, Nedbalek filed a motion to vacate the restitution hearing and informed the court that he intended to file a motion to withdraw the plea but needed additional time.

{18} Defendant's motion to withdraw his plea was filed on April 17, 2015. In this motion, Defendant argued that during his 181 days of incarceration, he was housed with an inmate (A.H.) who engaged in "profoundly offensive and dangerous habits," including defecating on the floor of the communal cell, using his bare hands to wipe himself after defecating, and then submerging his unwashed hands into a communal water bowl. Defendant alleged that guards at LCDC would require other inmates to clean up after A.H. without proper gloves or chemicals. When Defendant began to notice physical symptoms (in the form of bumps, pimples, and hard knots on his skin), and asked LCDC to move A.H., Defendant was allegedly threatened with solitary confinement. Defendant also alleged that his multiple requests for medical attention were denied. Defendant argued that, given the "hazardous biological" conditions in jail and being offered a plea deal under which he would be released, Defendant agreed because he "would have agreed to anything." He argued that, after

10

being released, he was diagnosed with a MRSA infection and that his doctor had told him that his infection was due to the profoundly unclean habits and deficient cleaning practices that occurred at LCDC. In the motion to withdraw his plea, Defendant argued that his plea was not voluntary and that the conditions at LCDC, coupled with Kicklighter's assertion that her representation of Defendant was ineffective, should be enough for Defendant to withdraw his plea.

{19} On April 17, 2015, in lieu of holding the continued restitution hearing, the district court heard Defendant's motion to vacate the restitution hearing and his motion to withdraw his plea. As to the motion to vacate, defense counsel stated that he did not think that he could cross-examine witnesses that day because he did not fully understand the case and because the motion to withdraw Defendant's plea was reasonable and ought to be heard prior to any restitution hearing. The State argued that Defendant was attempting to further delay the proceedings and requested that the court proceed to sentencing. The court stated that it would deny Defendant's motion to vacate and that restitution could occur after sentencing.

{20} On the motion to withdraw his plea, Defendant argued primarily that the plea was not voluntary, and secondarily, that Defendant did not receive effective assistance of counsel. When asked by the district court whether that ineffectiveness happened prior to or at the time the plea was entered, defense counsel stated that

11

Kicklighter had indicated that she was overwhelmed but that Kicklighter would have to inform the court on that issue. When addressing the alleged conditions at LCDC, the court stated that it would accept all of Defendant's arguments regarding the conditions in jail and LCDC's response to Defendant's concerns and requests as true in determining whether the plea was voluntary. The court then indicated that in order to make it believable or convincing that the situations were part of the duress, why were the conditions and threats not mentioned to his attorney. Defense counsel offered to put Defendant on the stand to question him about why he did not report the allegedly coercive conditions at the time of the plea, and the court replied that no coercive conditions were reported, and the court was not put on notice. Defense counsel neither offered to nor actually called Kicklighter to testify about her work on the plea negotiations in Defendant's case.

{21} In response, the State called John Sugg, the former prosecuting attorney that negotiated the plea for the State in Defendant's case. According to Sugg, the plea was not the result of one day of negotiation, and he indicated that he had been working with Kicklighter for several months and with another defense attorney prior to that. There was no reason for Sugg to believe that the plea was not voluntary, and in fact, Sugg made certain concessions on the plea at Kicklighter's request, including removing the floor on sentencing and allowing Defendant to be released from jail that

12

day to assist in preparing for the restitution hearing. The State argued that there was no evidence that Defendant was actually coerced into pleading and that he failed to meet his burden for withdrawing his plea. The State asserted that, as to Kicklighter's alleged ineffectiveness in Defendant's case, any ineffectiveness which may have occurred did not occur until *after* the plea was entered. The State also argued that allowing Defendant to withdraw his plea would be prejudicial to the State because the prosecuting attorney on the case, Sugg, was no longer employed with the Office of the District Attorney.

{22}     The district court found that Kicklighter provided effective assistance of counsel to Defendant. The court observed that "Kicklighter is . . . a great attorney and . . . she did a very nice job of representing [Defendant]." It also found that, while the conditions at LCDC gave rise to "a heck of a lawsuit," even accepting Defendant's claims as true, there was not sufficient grounds to set aside the plea. Moreover, the court concluded that the plea was well-reasoned, had been adequately discussed with Defendant during the colloquy, and the plea was knowingly, voluntarily, and intelligently made.

{23}     The district court re-set the hearing for restitution/sentencing for May 27, 2015. In response, defense counsel filed a second motion to vacate the restitution hearing, arguing that he did not see how the restitution hearing could proceed "given the

13

statutes of New Mexico . . ., due process, and fundamental fairness to . . . Defendant." In this motion, defense counsel argued that the restitution hearing should be vacated essentially because he could not determine a reasonable amount of restitution without the receipts and documentation in the State's possession. The court agreed that, at this point, restitution did not need to be calculated until Defendant was put on probation or parole, and the restitution hearing was vacated.

{24} During the May 27, 2015 sentencing hearing, Defendant was judged guilty pursuant to his plea and sentenced to a total period of incarceration of ten years, less 182 days for pre-sentence incarceration credit, plus two years of parole to run concurrently with five years of supervised probation. Restitution in an amount yet to be determined was also ordered as a special condition of probation. This appeal followed.

**DISCUSSION**

{25} As indicated earlier, Defendant argues that the district court (1) abused its discretion when it refused to permit Defendant to withdraw his plea because he did not receive effective assistance of counsel and because his plea was coerced, and (2) abused its discretion when it refused to grant Defendant's requests for continuance of his restitution and sentencing hearings and proceeded to sentence him. We address each argument in turn.

14

## I. Plea Withdrawal

{26} A district court's denial of a motion to set aside a plea is reviewed for an abuse of discretion. *State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323. "[A] trial court abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error[.]" *Id.* "A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *State v. Garcia*, 1996-NMSC-013, ¶ 7, 121 N.M. 544, 915 P.2d 300.

## A. Ineffective Assistance of Counsel

{27} "The voluntariness of a plea entered on the advice of counsel depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. The two-part standard delineated in *Strickland v. Washington*, 466 U.S. 668 . . . (1984), applies to ineffective-assistance claims arising out of a plea agreement. To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Hunter*, 2006-NMSC-043, ¶ 12, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citations omitted).

{28} As to the first prong, "[c]ounsel's performance is deficient if it fell below an objective standard of reasonableness." *Id.* ¶ 13 (internal quotation marks and citation

omitted). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted). As to the second prong, to establish prejudice from trial counsel's ineffectiveness, a defendant must show that there is a reasonable probability that but for counsel's ineffectiveness, the result of the proceeding would have been different. *State v. Dylan J.*, 2009-NMCA-027, ¶ 38, 145 N.M. 719, 204 P.3d 44. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 28, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). In the context of pleas, prejudice is established by showing that "counsel's constitutionally ineffective performance affected the outcome of the plea[.]" *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

{29} In this case, Defendant begins his argument by stating that the district court erred in rejecting his ineffective assistance of counsel claim on the ground that Kicklighter's ineffectiveness only impacted his restitution hearing and not his plea. He asserts that the restitution hearing was incorporated into his plea, and the results of that hearing directly impacted his sentencing exposure. Defendant also argues that Kicklighter was not effective specifically as to the plea because: (1) she was on the

case for less than a month before having Defendant plead guilty, and she was unfamiliar with the facts of the case as evidenced during the restitution hearing; (2) she failed to investigate viable defenses, as evidenced by the fact that a subsequent defense attorney allegedly discovered evidence that the victim was not as financially devastated as the State had represented to the court; (3) she failed to investigate whether the counts violated double jeopardy; (4) she failed to retain an expert forensic accountant; and (5) she failed to challenge a viable pretrial release issue and instead used release as a means of inducing a plea.

{30} Defendant asserts that all of the aforementioned deficiencies prejudiced him because they effectively denied him counsel during critical stages of the proceedings and resulted in him entering a plea involuntarily and unknowingly. In support of his argument that he was prejudiced, Defendant contends that the record establishes that he would have taken his case to trial had Kicklighter and his prior attorneys not been ineffective.

{31} In response, the State first argues that because Defendant unconditionally pleaded guilty, he waived all nonjurisdictional defects and defenses, and he may not now challenge Kicklighter's alleged failures to investigate defenses, raise a double jeopardy argument, retain an expert, or challenge any pretrial release issues. Putting aside Defendant's nonjurisdictional contentions, the State contends that Defendant's

position boils down to the notion that he would have taken his case to trial had Kicklighter and his prior attorneys not been ineffective. In response to Defendant's position, the State asserts that it is "highly improbable" that Defendant, facing a possible life sentence if convicted, would have insisted on proceeding to trial given that Kicklighter was able to negotiate a plea agreement that included the possibility of no incarceration. The State argues that Defendant's position that he would have gone to trial absent Kicklighter's alleged deficient performance is nothing more than a self-serving, unsubstantiated declaration that is insufficient to prove prejudice.

{32}     As a preliminary matter, we agree with the State that "a voluntary guilty plea ordinarily constitutes a waiver of the defendant's right to appeal his conviction on other than jurisdictional grounds." *State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.3d 896 (internal quotation marks and citation omitted). But in this case, it is precisely the voluntariness of the plea that Defendant is disputing. We do not interpret Defendant to be arguing for reversal on the basis of particular defenses, on double jeopardy grounds, or based on the expert or pretrial release issues. We interpret Defendant to be arguing that Kicklighter's alleged failures to raise those certain issues suggest that she was ineffective and that Defendant should be permitted to withdraw his plea because her deficient performance prejudiced him. *See Hunter*, 2006-NMSC-043, ¶¶ 14-15 (outlining alleged deficiencies by trial counsel and

18

indicating that to determine whether the defendant's counsel was constitutionally ineffective, the appellate courts must examine the merits of each alleged deficiency).

{33}     Insofar as Defendant asserts that the district court erred in holding that Kicklighter's ineffectiveness only impacted his restitution hearing in an attempt to reinvigorate Defendant's ineffective assistance of counsel claim due to institutional ineffectiveness or Kicklighter's caseload issues, we are unconvinced. The district court was correct to note that Kicklighter's statements to the court regarding her representation and her caseload occurred at Defendant's restitution hearing, which undisputedly happened nearly five months after the change of plea hearing. Kicklighter's statements to the court at the restitution hearing indicate that she was overloaded at that time, but that the Office of the Public Defender assigned her numerous cases in Lincoln County sometime *after* she was assigned Defendant's case. We are unable to find any support in the record for Defendant's contention that Kicklighter's caseload issues impacted her ability to negotiate his plea. To the contrary, the only evidence in the record regarding Kicklighter's representation in the plea negotiations suggests that (1) she herself felt that the plea was voluntary, and (2) she was able to effectively negotiate with the State. During the hearing on the motion to withdraw Defendant's plea, the State elicited testimony from the former prosecutor, Sugg, that he had worked with Kicklighter on the deal over a few months and that

Kicklighter had bargained for certain concessions by the State. The plea provided an avenue under which Defendant could possibly serve no jail time, and Kicklighter obtained two different caps on sentencing. Kicklighter was also able to negotiate for Defendant's immediate release. Thus, insofar as Defendant tries to rely on Kicklighter's broader caseload issues for his ineffective assistance of counsel claim, we are not persuaded.

{34} As to the specific alleged deficiencies highlighted by Defendant in his brief in chief that are separate from the institutional/caseload issues, we conclude that Defendant has failed to meet his burden of proving that Kicklighter's performance was deficient and that her performance prejudiced Defendant. Although he alleges that Kicklighter was unfamiliar with the facts and the victim's background such that there may have been viable but unpursued defenses, we see no evidence in the record to support Defendant's position. *In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 ("This [C]ourt will not search the record to find evidence to support an appellant's claims."). Defendant's mere allegations are insufficient to establish a deficiency as there is nothing in the record, either in the form of testimony from Kicklighter or Defendant, about Kicklighter's knowledge of the case at the time the plea was entered. Additionally, Defendant's argument that there may have been a viable defense because the victim may not have been as financially impacted as

represented to the district court is purely speculative. *See State v. Ortega*, 2014-NMSC-017, ¶¶ 57, 59, 327 P.3d 1076 (rejecting claims of ineffective assistance of counsel because the arguments were speculative). Similarly, Defendant's argument that Kicklighter failed to investigate the possibility of double jeopardy is speculative, as we have no testimony from either Kicklighter or Defendant about what was done in preparation of the plea. *See id.*

{35}    As to Kicklighter's final two alleged deficiencies, i.e. that she failed to retain an expert in anticipation of the plea and improperly made immediate release a condition of the plea, Defendant cites to no evidence or authority that these decisions fell below an objective standard of reasonableness. Because we have a strong presumption that the conduct of counsel is within the wide range of reasonable professional assistance, *see Hunter*, 2006-NMSC-043, ¶ 13, and because Defendant provides no authority in support of his assertion that Kicklighter was deficient in her performance, we conclude that Defendant has not met his burden in proving the first part of the two-pronged *Strickland* standard. *See State v. Ponce*, 2004-NMCA-137, ¶ 36, 136 N.M. 614, 103 P.3d 54 (declining to address an assertion where the defendant provided no authority in support of that assertion); *see also Hunter*, 2006-NMSC-043, ¶ 12 (recognizing the *Strickland* two-prong standard).

{36}     But even if this Court agreed that defense counsel exhibited some deficiencies during the pendency of Defendant's case, we nevertheless conclude that Defendant failed to prove that defense counsel's performance prejudiced the defense and failed to prove there is a reasonable probability that, but for counsel's ineffectiveness, the result of the proceeding would have been different, as required by *Strickland*, 466 U.S. at 687, *Hunter*, 2006-NMSC-043, ¶ 12, and *Dylan J.*, 2009-NMCA-027, ¶ 38.

{37}     In considering the prejudice prong, we may consider the strength of the State's evidence, "reasoning that a defendant may be more likely to plead guilty if the evidence against him is strong." *Hunter*, 2006-NMSC-043, ¶ 26. "Also strongly persuasive of the voluntariness of the plea are the responses made by [the] defendant himself to the court's inquiries concerning his desires relative to the change of his plea[.]" *State v. Byrd*, 1968-NMSC-051, ¶ 14, 79 N.M. 13, 439 P.2d 230. Moreover, "[b]ecause courts are reluctant to rely solely on the self-serving statements of defendants, which are often made after they have been convicted and sentenced, a defendant is generally required to adduce additional evidence to prove that there is a reasonable probability that he or she would have gone to trial." *Hunter*, 2006-NMSC-043, ¶ 26 (internal quotation marks and citation omitted).

{38}     We conclude that it is improbable that Defendant, who was facing a life sentence if convicted and against whom the State had a strong case, would have gone

22

to trial given that Kicklighter was able to negotiate a plea agreement under which he could potentially serve no prison time. Defendant's assertion otherwise is merely a self-serving statement upon which we decline to rely. We conclude that Defendant's position as to prejudice is essentially that Nedbalek would take the case to trial if given the opportunity, and we further conclude that his position is wholly self-serving and does not actually prove prejudice. *State v. Hoxsie,* 1984-NMSC-027, ¶ 8, 101 N.M. 7, 677 P.2d 620 ("An assertion of prejudice is not a showing of prejudice."), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, 108 N.M. 722, 779 P.2d 99. We also note that Defendant, during the plea colloquy, stated that (1) no one threatened him or promised him anything to accept the plea, (2) part of the reason for entering the plea was to have the remaining charges dismissed, and (3) he believed he understood the plea agreement and he understood his sentencing exposure under the agreement. Thus, Defendant's responses to the district court's colloquy supported his change of plea to guilty.

{39} Because Defendant failed to show in this direct appeal that Kicklighter's assistance regarding his plea was ineffective, we decline to reverse. There is a lack of evidence on the record to support Defendant's claim that Kicklighter was overwhelmed, at the time of his plea, and therefore did not effectively negotiate the plea or was otherwise deficient in her performance. Because many of Kicklighter's

23

alleged failures are based on facts that are not of record, Defendant's ineffective assistance of counsel claim is likely more appropriately pursued, if at all, in habeas corpus proceedings. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

**B.     Coercion**

{40}     A plea is constitutionally void if "induced by threats (or promises to discontinue improper harassment) [or] misrepresentation (including unfulfilled or unfulfillable promises)[.]" *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks and citation omitted); *Byrd*, 1968-NMSC-051, ¶ 13 ("If a plea be induced by promises or threats, it is void[.]"). "[T]he agents of the [s]tate may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Brady*, 397 U.S. at 750. "The burden [is] on [the] defendant . . . to prove that his plea was coerced as he claims and that it was not voluntarily made." *Byrd*, 1968-NMSC-051, ¶ 16.

{41}     Defendant argues that his plea was not voluntary because he was subject to the following coercive conditions: (1) the "unconstitutional bail" that "was set at the State's behest and pursuant to the district court's orders[,]" (2) the "unsanitary and

24

hazardous conditions and substandard medical treatment at LCDC[,]" and (3) the "ongoing staffing issues and institutional ineffectiveness at the . . . [Office of the Public Defender]."

**1. Bail and Pretrial Incarceration**

{42} Article II, Section 13 of the New Mexico Constitution affords criminal defendants a right to bail, stating that "[a]ll persons shall, before conviction, be bailable by sufficient sureties" and that "[e]xcessive bail shall not be required[.]" *See State v. Brown*, 2014-NMSC-038, ¶ 19, 338 P.3d 1276.[2] Rule 5-401(A) NMRA similarly reflects a defendant's right to bail, stating that "[p]ending trial, any person bailable . . . shall be ordered released pending trial on the person's personal recognizance or upon the execution of an unsecured appearance bond in an amount set by the court, . . . unless the court makes a written finding that such release will not reasonably assure the appearance of the person as required."

{43} Factors bearing upon the determination of what conditions of release are appropriate are set forth in Rule 5-401(C) and include:

---

[2] We note that Article II, Section 13 of the New Mexico Constitution has been amended since Defendant pleaded guilty and was sentenced. See N.M. Const. art. II, § 13 (2016); 2016 S.J.R. 1 (adopted Nov. 8, 2016). The analysis in this opinion is conducted under the framework in place at the time Defendant's case was pending. We urge our trial courts and members of the bar to monitor changes in this area moving forward.

(1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including:

    (a)     the person's character and physical and mental condition;

    (b)     the person's family ties;

    (c)     the person's employment status, employment history and financial resources;

    (d)     the person's past and present residences;

    (e)     the length of residence in the community;

    (f)     any facts tending to indicate that the person has strong ties to the community;

    (g)     any facts indicating the possibility that the person will commit new crimes if released;

    (h)     the person's past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings; and

    (i)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of an offense under federal, state or local law;

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release; and

(5)     any other facts tending to indicate the person is likely to appear.

{44} Defendant argues that in setting bail in his case, the district court focused exclusively on the seriousness of the charges and the State's representations as to the strength of its case, but improperly ignored all other factors outlined in Rule 5-401(C). He asserts that the nature of the offenses in this case were not violent, he did not present a threat of violence to the community, and his history and characteristics supported releasing him on minimal or no bail. He also argues that the district court improperly "used bail as a security deposit to ensure that there was money to pay the victim's restitution if [Defendant] was found guilty[.]"

{45} The State responds to Defendant's argument by highlighting the arguments made to the district court during the January 10, 2014 hearing on the conditions of release. While agreeing that defense counsel had argued to the district court that Defendant presented no threat of violence, had lived in the State of New Mexico for an extended period of time, had been married with three children, had no prior charges, had not yet fled, and had complied with court orders and stayed in touch with his attorneys, the State also highlighted arguments made to the court that supported imposition of a bond. Specifically, the State highlighted representations that Defendant was believed to have fraudulently transferred $350,000, causing his victim a loss of approximately $250,000, posed a flight risk, possessed substantial resources, was uncooperative in pre-release interviews, and hid information relating to his

finances. The State asserts that the court evaluated a number of factors both for and against setting a bond and concluded that a $250,000 cash-only bond would reasonably assure Defendant's appearance.

{46}     We agree with the State that the district court heard argument from both sides and weighed the factors to correctly arrive at its determination that a bond was appropriate. The court evaluated Defendant's conditions of release on three separate occasions before Defendant changed his plea from not guilty to guilty. After hearing the State's arguments about the crimes with which Defendant was charged, the facts about his alleged scheme, the impact on the victim, the potential financial resources of Defendant and his extended family, and after receiving the Probation and Parole Department's recommendation in its pre-release report, the court decided to impose a bond. When initially imposing the bond, the court expressed concern that Defendant could flee given the amount of prison time faced. In ordering the bond, the court ordered that it be in an amount less than that requested by the State. When reconsidering the bond, the court indicated that the case appeared strong and that the bond as previously ordered would remain. Despite the fact that Defendant had ties to the community and had not engaged in a violent crime, given the weight of the evidence and the concern that Defendant might flee, we do not conclude that the district court erred in imposing a $250,000 cash-only bond under Rule 5-401(C).

28

{47} Because the district court did not err, we fail to see how the fact that Defendant was confined pre-trial, on its own, created a coercive condition that warrants withdrawal of Defendant's plea. We address the conditions of Defendant's confinement in the following subsection.

**2.    Conditions at LCDC**

{48} Defendant next argues that the hazardous conditions at LCDC similarly created a coercive condition that rendered his guilty plea involuntary. Defendant notes that the district court accepted Defendant's assertions regarding the unsanitary conditions at LCDC but did not consider the conditions relevant to Defendant's agreement to plead guilty as the court did not believe Defendant had told his attorney or the court about the situation at LCDC. Defendant argues that his attorneys and the court were informed of his health situation as evidenced by the fact that Bradley told the court that Defendant had medical issues that were not being addressed in jail during the conditions of release hearing on April 16, 2014. Defendant then argues that his decision to plead guilty was a choice between "continuing to suffer actual mental and physical harm or pleading guilty and living to fight another day." He argues that the conditions at LCDC "subjectively induced a plea" and "were constitutionally unacceptable governmental forces" that should void his plea. Finally, Defendant argues that incarceration itself has been found to give rise to psychological and

29

cognitive impairments, and when coupled with the unique stress created by the deplorable conditions at LCDC, Defendant was unable to "fully assess and knowingly waive his rights."

{49} The State responds that Defendant's dissatisfaction with his confinement conditions does not render his voluntary plea involuntary. Although the State recognizes that the conditions at LCDC involve more than just dissatisfaction, it argues that nothing in the record supports a conclusion that Defendant's plea was anything other than voluntary. The State highlights the clear and comprehensive nature of the plea colloquy, the fact that Defendant confirmed nobody had threatened him or promised him anything in exchange for his plea, and the fact that Kicklighter similarly stated during the colloquy that she was not aware of any reason that the court should not accept Defendant's plea as a knowing, intelligent, and voluntary act. The State also asserts that Defendant made no mention of the conditions of his confinement at the change of plea hearing and did not alert the court to the conditions of his confinement until nine months later. The State argues that Defendant informed the court during the colloquy that he was motivated to plead guilty to 14 felony counts because, in exchange, the State had agreed to dismiss the remaining 197 counts, and the record supports that Defendant pleaded guilty as part of a bargained-for transaction.

{50} We agree that there is no evidence in the record that, at the time Defendant pleaded guilty, he was doing so to escape inhumane conditions in jail. As noted by the State, the district court went through the plea colloquy diligently, and Defendant indicated he understood the impact of his plea. The court stated that it would be asking Defendant a number of questions for the express purpose of making certain that he was knowingly, voluntarily, and intelligently pleading guilty. Defendant stated that nobody had threatened him or promised him anything in exchange for his plea. While Defendant's attorney had vaguely mentioned that Defendant had unaddressed health conditions in jail at a hearing on conditions of release earlier in the case, neither Defendant nor Defendant's attorney mentioned at the change of plea hearing that the conditions of his confinement were intolerable. Defendant stated at his change of plea hearing that he was motivated to plead guilty to 14 felony counts because, in exchange, the State had agreed to dismiss the remaining 197 counts. As explained by our Supreme Court, "strongly persuasive of the voluntariness of the plea are the responses made by [the] defendant himself to the court's inquiries concerning his desires relative to the change of his plea[.]" *Byrd*, 1968-NMSC-051, ¶ 14. In this case, we agree that the record supports that Defendant pleaded guilty as part of a bargained-for transaction, not because he was coerced into doing so.

31

### 3. Ineffective Assistance of Counsel

{51} Defendant argues that his ineffective assistance of counsel claim is relevant on its own to allow withdrawal of his plea, but also as a coercive condition that calls into question the voluntariness of his plea. Because, as outlined earlier, we see no evidence in the record of ineffective assistance of counsel at the institutional level or as to Kicklighter's performance that specifically impacted Defendant's plea, we similarly fail to see how Defendant's counsel's representation created a coercive condition. There is no evidence in the record of defense counsel's workload at the plea phase, of Defendant's knowledge of Kicklighter's workload and its effect on his case, or his knowledge of the institutional issues at the Office of the Public Defender such that we can conclude the institutional issues created a coercive condition. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

## II. Continuances

{52} "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. There are no

grounds for reversal unless the defendant demonstrates abuse of discretion that resulted in prejudice to the defendant. *See State v. Sanchez*, 1995-NMSC-053, ¶ 17, 120 N.M. 247, 901 P.2d 178.

> There are a number of factors that trial courts should consider in evaluating a motion for continuance, including the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

{53}    Defendant argues that the district court abused its discretion when it refused to grant his requests for continuance of his restitution and sentencing hearings and proceeded to sentence him. Although Defendant admits that the court granted a number of continuances for his restitution and sentencing hearings, Defendant argues that the court became "increasingly prone to blaming [Defendant] for his attorneys' ineffectiveness[.]" He argues that an examination of the factors outlined in *Torres*, 1999-NMSC-010, ¶ 10, demonstrates that the request for continuance should have been granted.

{54}    According to Defendant, he should have been granted continuances so that his new attorney had a reasonable amount of time to provide constitutionally adequate assistance. He notes that his sentencing exposure under the plea agreement was

related to the pre-sentence restitution hearing, and he was inherently entitled to effective assistance in those matters. He also argues that the prior continuances were needed for "systemic reasons" beyond Defendant's control and that there was no evidence that delaying the matter a few more months would have inconvenienced the State. According to Defendant, the district court's refusals to grant continuances were based on "improper bias" against Defendant as specifically evidenced by the court's position on the bond early in the case; blaming Defendant for his attorneys' ill-preparedness and "imposing fees for continuances"; and holding Defendant's "decision to hire private counsel against him for sentencing purposes." Defendant argues that the court's ruling prejudiced him because there was evidence that he wanted to present, but was unable to do so. He asserts that because of the court's rulings, he was denied effective assistance of counsel, was sentenced by a court that could not be fair and impartial, punished for exercising his rights, and denied due process.

{55} The State responds that Defendant's argument that the district court abused its discretion in refusing to continue his restitution hearing is without a factual basis, and to the extent Defendant argues that sentencing should have been continued, he failed to preserve that claim for appellate review. According to the State, the district court "granted each and every one" of Defendant's requests to continue the restitution

hearing, and Defendant never asked to continue sentencing. Because Defendant did not request to continue sentencing, this Court should only review the decision for fundamental error. The State, citing *State v. Bowie*, 1990-NMCA-068, ¶¶ 2, 19, 110 N.M. 283, 795 P.2d 88, argues that the district court did not err when it sentenced Defendant in accordance with the terms of the plea agreement after he failed to honor his promise to make restitution pending sentencing.

{56}     We note preliminarily that the purpose of restitution in this case was two-fold: (1) to determine the amount that Defendant needed to pay prior to sentencing to benefit from a more favorable sentencing structure under the plea agreement, and (2) to determine how much ought to be paid once Defendant was on probation. Initially, the district court scheduled the restitution hearing for August 2014 and the sentencing hearing for January 2015, presumably so that an amount could be determined, Defendant would have some time to pay restitution, and then the court would know which sentencing structure to proceed with. However, the restitution hearing was continually pushed back—to December 2014, to early January 2015, to late January 2015, to April 2015, and finally to May 2015. By May 2015, the district court decided that it could wait to determine a restitution amount until Defendant was on probation, but that it should proceed with sentencing. Thus, the court focused on

determining restitution for the purpose of probation, rather than determining restitution for the purpose of sentencing.

{57} In assessing the appropriateness of the district court's approach to the restitution and sentencing hearings, *Bowie* is instructive. In *Bowie*, the defendant appealed his sentence following a guilty plea. 1990-NMCA-068, ¶ 1. The defendant's plea and disposition agreement provided that sentencing be postponed for at least six months. *Id.* ¶ 17. After granting a number of continuances as to the sentencing hearing and after the defendant failed to make any restitution payments, the court imposed a sentence. *Id.* ¶¶ 17-19. This Court held that the defendant "was given an opportunity to explain what efforts he had made to acquire funds" and that he "was provided with an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* ¶ 19. The Court also noted that the defendant's argument that the district court could not have evaluated his efforts to make restitution because no conditions of restitution or any amount to be paid had been established was unconvincing, in part, because "in view of [the] defendant's failure to make *any* restitution, he was not prejudiced by the failure to specify conditions and the amount of restitution." *Id.* ¶ 20.

{58} Similar to the defendant in *Bowie*, Defendant was initially given approximately six months to attempt to pay restitution prior to sentencing. Also as in *Bowie*, Defendant's sentencing hearing was delayed but, despite the delay, no restitution

36

payments were made. There was no effort by Defendant to make any restitution payments, even though the district court indicated that a $50,000 payment would be a showing of good faith. As asserted by the State during the May 2015 hearing, the purpose of the pre-sentencing restitution was so that Defendant could have a lower ceiling and no floor as to his incarceration, on the condition that he pay restitution. In this case, there was no indication that Defendant made any payments whatsoever. Therefore, as in *Bowie*, we conclude here that because Defendant failed to make any restitution, he was not prejudiced by the failure to specify the amount of restitution owed prior to sentencing.

{59} The district court's decision to proceed with sentencing aside, we agree with the State that under the facts of this case, the court did not fail to grant any continuance on the matter of restitution. The district court merely proceeded to sentencing and decided to continue the restitution hearing until Defendant was on probation. Additionally, Defendant did not request a continuance on the sentencing hearing and that issue was therefore not preserved. *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)). We need not consider the matter. *State v.*

37

*Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

{60} Even if we acquiesce to Defendant's request that this Court review the matter for fundamental error, we still conclude that there is no basis on which to reverse. *See* Rule 12-216(B)(2)(c), (d) NMRA (2004) (recompiled as Rule 12-321(B)(2)(c), (d) NMRA) (providing appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights); *State v. Sosa*, 1997-NMSC-032, ¶ 23, 123 N.M. 564, 943 P.2d 1017 (stating that an unpreserved claim may be reviewed for fundamental error). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Fundamental error "must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *Id.* (internal quotation marks and citation omitted); *State v. Garcia*, 1942-NMSC-030, ¶ 25, 46 N.M. 302, 128 P.2d 459. Defendant has failed to demonstrate such exceptional circumstances.

**CONCLUSION**

{61} For the reasons set forth in this opinion, we affirm.

38

{62}    **IT IS SO ORDERED.**


                                                        _____

                                                        **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Judge**


_____

**M. MONICA ZAMORA, Judge**