1999-NMSC-004

974 P.2d 136

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Harry BROWN, Defendant–Appellant.**

**No. 25193.**

Supreme Court of New Mexico.

Jan. 6, 1999.

Tom Udall, Attorney General, Bill Primm, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Public Defender, Santa Fe, for Defendant–Appellant.

## OPINION

BACA, Justice.

{1} Defendant Harry Brown appeals the district court's order denying his motion for reconsideration of his sentence. On certification from the Court of Appeals, we consider the following issues: 1) whether Brown's motion for reconsideration is a matter for which only the Supreme Court has jurisdiction; 2) whether Brown's sentence to the Curry County Detention Center (jail) rather than the Department of Corrections (prison or corrections facility) was legal; 3) whether Brown was entitled to have the time he served on probation credited as time served on parole; 4) whether the language in the amended judgment and sentencing order was ambiguous; and 5) whether the district court properly enhanced Brown's confinement. Because this case raises issues of substantial public interest involving statutory interpreta-tion and jurisdiction, the Court of Appeals certified the case to this Court for our review pursuant to NMSA 1978, § 34–5–14(C) (1972) and Rule 12–606 NMRA 1998. After careful review, we affirm the district court's order denying Brown's motion.

## I.

{2} On December 5, 1995, Brown pled guilty to a felon-in-possession-of-a-firearm charge. Brown was also subject to an enhanced sentence as a habitual offender. The prosecutor used a prior robbery conviction to support the firearm charge and a prior forgery conviction to support sentencing enhancement as a habitual offender. At the dispositional hearing, the prosecutor mentioned that Brown also had a prior felony conviction for possession of cocaine but never submitted the conviction either to prove the firearm charge or to enhance Brown's sentence.

{3} The plea agreement provided that the court sentence Brown to one year incarceration as a habitual offender, and eighteen months for the firearm charge. The plea agreement also provided that the court suspend all but one day of the eighteen-month firearm sentence. The one remaining day of incarceration for the firearm sentence was to run concurrently with the last day of the habitual offender sentence. Under the terms of the plea agreement, the court would place Brown on supervised probation for the remaining eighteen months of the firearm sentence. According to the plea agreement, Brown was to be incarcerated in jail rather than prison.

{4} The judgment and sentence followed the plea agreement's terms but authorized Brown "to request consideration" for pre-sentence, post-judgment and post-sentence good time credit. However, according to the terms of the judgment and sentence, the court sentenced Brown to eighteen months for the firearm charge in prison, which the court suspended, with the remaining suspended sentence in jail. The court then filed an amended judgment and sentence that recommended work release.

{5} After serving one year in jail for the habitual offender charge, Brown was released and placed on probation for the remaining eighteen months of the suspended firearm sentence. On May 14, 1996, Brown's probation officer notified the court that Brown had violated several conditions of his probation and the State filed a motion to revoke Brown's probation. Brown then moved to vacate his original sentence, asserting that the court lacked jurisdiction to impose the original sentence because it was more than the law authorized. Brown also moved for the court to credit him for time he had served on the habitual offender sentence. The court denied Brown's motion, revoked his probation and ordered him to serve eighteen months in prison for the firearm sentence and one year supervised parole less the time credited from April 15, 1996 to February 15, 1997, for the time he spent on probation, and from February 15, 1997 until his delivery to prison after sentencing. Had he not violated his probation, Brown's probation would have ended on October 14, 1997. Brown later appealed to the Court of Appeals, which affirmed the probation revocation.

{6} Brown next filed a motion for reconsideration of his sentence with the district court, again contending that his sentence was improper. The district court denied the motion. Brown filed another appeal with the Court of Appeals, which certified the case to this Court for our review.

## II.

{7} As a threshold issue, we first consider whether Brown's motion for reconsideration of sentence challenges his sentence's legality, a matter over which only the Supreme Court has jurisdiction. In the Court of Appeals, the State argued that the court should dismiss this appeal because Brown challenges his sentence's legality under Rule 5–802 NMRA 1998, a matter where only the Supreme Court has jurisdiction. See Rules 5–801(A) and 5–802 NMRA 1998. We agree that the Supreme Court has exclusive jurisdiction over this matter. It is undisputed that Brown is challenging the legality of his sentence. Thus, the Court of

Appeals properly certified the matter to this Court for our review rather than dismissing the appeal. See NMSA 1978, § 34–5–10 (1998) (stating that "no matter on appeal in the supreme court or the court of appeals should be dismissed for the reason that it should have been docketed in the other court"). Now properly before this Court, we review the matter accordingly.

### A.

{8} Because this case involves issues concerning the district court's interpretation and application of the sentencing law, it is subject to de novo review. See State v. Rowell, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (stating that "[i]nterpretation of a statute is an issue of law") (citing State v. Romero, 119 N.M. 195, 197, 889 P.2d 230, 232 (Ct.App.1994); see also State v. Roman, 1998–NMCA–132, ¶ 8, 125 N.M. 688, 964 P.2d 852 (stating that the trial court's interpretation and application of the law are subject to a de novo review).

### B.

{9} We first address the issue of whether Brown's sentence to jail rather than prison was legal. Brown argues that under NMSA 1978, § 31–20–2 (1993), if a defendant receives a sentence of a year or more, the court must sentence the defendant to prison, not to jail. Brown further argues, relying on the Court of Appeals' opinion in State v. Ruiz, 109 N.M. 437, 439, 786 P.2d 51, 53 (Ct.App.1989), that in determining whether a sentence exceeds one year, the court must calculate the sentence before crediting for pre-sentence confinement. Thus, Brown argues that even if crediting him for his pre-sentence confinement reduced the actual time he served to less than a full year, it did not have any effect on the fact that his sentence was for a year. Accordingly, Brown argues that the court should have sentenced him to prison rather than to jail. We disagree.

{10} Pursuant to NMSA 1978 § 33–2–19, which the Legislature enacted one year after Ruiz, "[a]ll persons convicted of any crime where the punishment is impris-

onment for a term of one year or more, after accounting for any period of the sentence being suspended or deferred and any credit for presentence confinement, shall be imprisoned in a corrections facility[1] unless otherwise provided by law, and judgments must be issued accordingly." NMSA 1978, § 33-2-19 (1990). Section 32-2-19 clearly altered the law that *Ruiz* established in calculating whether a sentence exceeds one year. Here, the court sentenced Brown to one year for the habitual enhancement charge. Brown, according to his counsel's assertion, was confined at least five-and-a-half months prior to sentencing. After crediting Brown for his pre-sentence time served, the net result was a sentence of less than one year; thus, the law did not require the court to sentence Brown to prison. Therefore, Brown's sentence to jail was legal.

### C.

■ {11} We next address whether Brown was entitled to have the time he served on probation credited as time served on parole. Brown argues that under NMSA 1978, § 31-20-5(B) (1985), if a defendant serves probation and parole, the defendant should have the time served on parole credited as time served on probation. Brown contends that if the court had originally sentenced him to prison, he would have received credit for the time he served on parole as time served on probation. Because the court sentenced him to jail, Brown contends that he missed that opportunity. Brown suggests that he should now be credited for the time he served on probation as time served on parole. We disagree.

■ {12} It is true that Section 31-20-5(B) authorizes the time served on parole to be credited as time served on probation. However, only prison sentences, not jail sentences, can have a parole requirement. *See, e.g.,* NMSA 1978, § 31-21-10 (1994) (discussing parole only in relation to prison and not to jail). As we discussed earlier, because Brown's net habitual offender sentence was less than one year, the law did not require

the court to sentence him to prison. Because the court sentenced Brown to jail and not to prison, parole was not authorized. Therefore, although Section 31-20-5(B) allows the time served on parole to be credited as time served on probation, no provision exists allowing the time served on probation to be credited as time served on parole.

### D.

{13} Next, we address whether the language in the amended judgment and sentencing order is ambiguous. Brown claims that the amended judgment and sentence order is ambiguous because it refers to Brown's sentence to prison, while also requiring that Brown serve the balance of his sentence in jail. Brown claims that the reference to prison is confusing. We disagree and hold that Brown waived any argument that the amended judgment and sentence order is ambiguous.

■ {14} A waiver "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter [that] depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *State v. Gilbert,* 98 N.M. 530, 534, 650 P.2d 814, 818 (1982)(quoting *Edwards v. Arizona,* 451 U.S. 477, 489, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (citations omitted)). In this case, Brown had an express agreement and desire to serve his sentence in jail as a term of his plea agreement. Thus, he knowingly and voluntarily accepted his sentence to jail. More importantly, while both the original and amended judgment and sentence contained the same language that Brown now claims is ambiguous, he did not object to his sentence to jail or claim that the judgment and sentence order was ambiguous until after he had served a year of his sentence in jail and had violated his probation. Based upon the particular facts and circumstances surrounding this case, we hold that Brown

---

1. It is undisputed that the terms "correction facility" and "prison" are interchangable in this context.

waived any argument that the amended judgment and sentence order was ambiguous.

### E.

{15} Finally, we address the State's contention that the court improperly enhanced Brown's sentence because he may have had an additional prior felony conviction that the law required the court to consider when enhancing his sentence. The State argues that although the prosecutor used a prior robbery conviction to prove the "felon" element in the felon-in-possession-of-a-firearm charge and a prior forgery conviction to support habitual enhancement, a third felony conviction was not used to enhance his sentence. The State argues that because the court did not consider this additional felony when enhancing his sentence as the Habitual Offender Act requires, Brown's sentence was illegal and he is being rewarded for improper enhancement. We disagree.

 {16} Although we recognize that the Habitual Offender Act requires the district court to enhance each of a defendant's felony convictions, *see State v. Bachicha*, 111 N.M. 601, 606, 808 P.2d 51, 56 (Ct.App.1991), there is insufficient proof that Brown had an additional prior felony conviction. "[I]n order to justify imposition of the enhanced sentence the State is required to prove a specific sequence of 'commissions' and 'convictions.'" *State v. Valenzuela*, 94 N.M. 285, 287, 609 P.2d 1241, 1243 (Ct.App.1979) (overruled on other grounds by *Hernandez v. State*, 96 N.M. 585, 633 P.2d 693 (1981)). "The burden is on the State to establish every essential element of its case." *Id.* (citing *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976)).

{17} Here, although the prosecution mentioned that Brown also had a third prior felony conviction at the dispositional proceeding, the prosecutor did not submit this prior conviction to enhance Brown's sentence. The prosecution did not offer any proof to establish the date of the offense, an essential element in an enhancement prosecution. *See Valenzuela*, 94 N.M. at 287, 609 P.2d at 1243. The prosecution merely mentioned it in passing. In fact, the prosecution did not mention the third prior felony anywhere else in the record, the plea agreement, or either in the original or amended judgment and sentence. Thus, because proof of an additional prior felony conviction was not established, we hold that the court properly enhanced Brown's sentence on the basis of the prior felony conviction.

{18} Based on the forgoing discussion, we affirm the district court's order denying Brown's motion for reconsideration of his sentence.

{19} **IT IS SO ORDERED.**

FRANCHINI, C.J., and MINZNER, SERNA and MAES, JJ., concur.

