This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41075**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARLOS MIGUEL MENDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Carlos Mendez appeals his conviction by a jury of aggravated driving while under the influence of intoxicating liquor or drugs (DUI) (0.16 or above), a fourth degree felony, contrary to NMSA 1978, Section 66-8-102(D)(1) (2016). Defendant argues that (1) his right to a speedy trial was violated; (2) the district court erred in denying his for-cause challenge to Juror 6; and (3) his sentence for one year of parole is

illegal and must be vacated. We affirm his conviction but vacate his sentence for one year of parole.

## BACKGROUND

**{2}** Defendant was arrested on October 18, 2020, for DUI. Following his arrest, Defendant was released from custody after three days on basic conditions of release. One month after his arrest, Defendant asserted his first demand for a speedy trial on November 19, 2020. Before the first trial setting was scheduled in this case, our New Mexico Supreme Court issued an order that suspended all in-person civil and criminal trials set to begin on or after November 16, 2020, until at least January 1, 2021. Following the resumption of jury trials, Defendant's trial was set to begin on April 9, 2021. However, due to various administrative and COVID-19 related delays, Defendant's trial was delayed for approximately two years. Less than one month before trial, on November 16, 2022, Defendant filed a motion to dismiss, alleging violation of his right to a speedy trial. A hearing was held and the district court denied Defendant's motion.

**{3}** Following the jury trial, Defendant was convicted of aggravated DUI and sentenced to serve a period of eighteen months imprisonment, with nine months suspended.

## DISCUSSION

### I. Defendant's Right to a Speedy Trial Was Not Violated

**{4}** We begin by addressing Defendant's argument that the district court erred in denying his motion to dismiss for violation of his right to a speedy trial. The State responds that Defendant's speedy trial right was not violated because the factors identified in *Barker v. Wingo*, 407 U.S. 514 (1972), weigh only slightly in his favor and Defendant cannot demonstrate that he was prejudiced by the delay. We agree.

**{5}** In reviewing a speedy trial ruling, "we defer to the district court's factual rulings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the [relevant] factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81. Moreover, "'[w]e accept the standard outlined by the United States Supreme Court that factual findings of a district court are entitled to substantial deference and will be reversed only for clear error.'" *State v. Gurule*, ___-NMSC-___, ¶ 20, ___ P.3d ___ (S-1-SC-37879, Dec. 7, 2023) (quoting *United States v. Taylor*, 487 U.S 326, 337 (1988)). "[W]hen a district court considers the *Barker* factors and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.*

### A. Length of Delay

**{6}** In relation to the first *Barker* factor, the speedy trial inquiry triggers at "twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases." *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387. It is undisputed that this is a simple case. Accordingly, the triggering delay for analysis for the other *Barker* factors is twelve months. *See id.* The State contends that the length of delay weighs only slightly, not heavily, against it.

**{7}** The district court calculated the total delay in this case to be approximately twenty-five and a half months or 781 days between Defendant's initial arrest on October 18, 2020, and the trial on December 7, 2022. The district court concluded that the length of delay weighed heavily against the State. Because the delay exceeded the threshold for a simple case by about thirteen and a half months, we agree with the district court and weigh this factor heavily against the State. *See State v. Marquez*, 2001-NMCA-062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (concluding that a delay of nine months past the date of presumptive prejudice in a simple case weighed "heavily against the [s]tate"); *see also Garza*, 2009-NMSC-038, ¶ 24 (stating "the greater the delay the more heavily it will potentially weigh against the [s]tate").

## B.     Reason for Delay

**{8}** Because the district court found that the delay was not caused by negligence or bad faith but was instead "d[ue] to administrative burdens of the criminal justice system," it weighed this factor "slightly against the State." The parties do not dispute the district court's findings on this factor. We agree and weigh this factor only slightly in Defendant's favor since delays in this case were due to various administrative reasons. *See State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121 (stating that administrative delay "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. (internal quotation marks and citation omitted")). Because this factor does not weigh heavily in Defendant's favor, we proceed directly to the particularized prejudice analysis. *See State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579 ("In a speedy trial analysis, if any of the three Barker factors does not weigh heavily in favor of a defendant . . . [the d]efendant must show particularized prejudice in order to prove their speedy trial was violated.").

## C.     Prejudice

**{9}** Finally we consider prejudice to Defendant, which is "the heart of the right to a speedy trial." *Garza*-2009-NMSC-038, ¶ 12. "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (internal quotation marks and citation omitted). Ordinarily, it is the defendant's burden to "make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *State v. Samora*, 2016-NMSC-031, ¶ 21, 387 P.3d 230. The

district court concluded that Defendant failed to show that he was prejudiced by any of the three defense interests.

## 1. Oppressive Pretrial Incarceration

**{10}** Whether pretrial incarceration is oppressive "depends on the length of incarceration, whether the defendant obtained release prior to trial, and prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). Defendant argues that he was subject to oppressive pretrial incarceration because he had "limitations on his liberty, employment, and financial issues." Defendant acknowledges that he was not incarcerated, but nevertheless he asserts that the district court "failed to appreciate that he was subject to these conditions for an unduly amount of time." The State responds that Defendant "suffered no oppressive pretrial incarceration because . . . he was jailed only for two days." We agree with the State.

**{11}** Although the district court did not make an explicit finding concerning oppressive pretrial incarceration, it did make numerous, undisputed, findings concerning this defense interest. Specifically, it found that Defendant: (1) was only held in detention for two days, (2) did not suffer the burdens associated with travelling because the majority of his appearances in court were virtual, (3) did not lose employment because of the delay, (4) never applied to any of the employment opportunities he claimed to have missed, (5) was not restrained by the conditions of his release from moving to Texas despite claiming that he was prevented from doing so, (6) did not lose his security clearance to Holloman Air Force Base despite expressing that he was worried about losing access to the base, (7) is still together with his wife despite stating that the delay caused marital issues, and lastly (8) never had to appear in person or submit to any sort of drug or alcohol testing during the delay.

**{12}** Based on the foregoing, we conclude that Defendant has failed to demonstrate that he suffered prejudice due to oppressive pretrial incarceration. *See State v. White*, 1994-NMCA-084, ¶ 7, 118 N.M. 225, 880 P.2d 322 ("[The d]efendant, having been released on bond, did not suffer oppressive pretrial incarceration."); *see also Garza*, 2009-NMSC-038, ¶ 37 (concluding a defendant made no showing of prejudice where he spent two hours in jail and was then released with normal bond restrictions).

## 2. Anxiety and Concern

**{13}** Defendant has not met his burden of showing that any anxiety and concern he suffered was undue. He merely asserts that he experienced "anxiety and concern for him and his family" and that he experienced this for an "unduly long amount of time." While the district court acknowledged that "there is some degree of anxiety inherent for every defendant awaiting trial," it concluded that Defendant failed to provide a specific articulation other than a very general assertion of anxiety. We agree that Defendant has failed to show that any anxiety he suffered was undue. *See State v. Ochoa*, 2017-

NMSC-031, ¶ 51, 406 P.3d 505 (stating that the anxiety suffered must be undue in order to weigh in a defendant's favor).

### 3.     Impairment to the Defense

**{14}**     Finally, the district court found that there was no evidence that Defendant's defense was impaired by the delay—the interest deemed "most serious" in the particularized prejudice analysis. *See Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Moreover, on appeal, Defendant does not assert that his defense was impaired by the delay.

**{15}**     We agree with the district court's conclusion that Defendant has not shown particularized prejudice resulting from the delay. Therefore, we decline to weigh the fourth *Barker* factor against the State.

### E.     Balancing the *Barker* Factors

**{16}**     We conclude that Defendant's right to a speedy trial was not violated because he has failed to show particularized prejudice and none of the *Barker* factors weigh heavily in his favor. *See Samora*, 2016-NMSC-031, ¶ 23 ("To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate.").

### II.     The District Court Did Not Err in Denying Defendant's For-Cause Challenge

**{17}**     Defendant next argues that the district court erred in denying his for-cause challenge to Juror 6 because "on two occasions . . . [he] clearly expressed bias towards law enforcement officials and against [Defendant]." It appears that Defendant argues that Juror 6 was impartial for two reasons—first, because Juror 6 made statements during voir dire indicating that he "did not presume [Defendant] entirely innocent," and second because Juror 6 made a statement indicating that he was biased in favor of law enforcement. According to Defendant, Juror 6's statements collectively "revealed that he was not an impartial juror, but instead had a strong and consistent bias in favor of law enforcement and against [him]." Because Defendant exhausted all of his peremptory challenges before the final juror was selected, he asserts that he was prejudiced by the district court's refusal to strike Juror 6. The State responds that Juror 6 "did not say anything that would require the district court to strike the juror for cause" because "[t]he mere fact that Juror 6 stated that he would likely give law enforcement's testimony more weight does not show bias such that, as a matter of law, he should have been excused." We are not persuaded that reversible error occurred.

**{18}**     We review a district court's "rulings regarding selection of jurors for an abuse of discretion because the [district court] is in the best position to assess a juror's state of mind, based upon the juror's demeanor and credibility." *State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523 (internal quotation marks and citation omitted). An abuse of discretion exists *only* where "the [district court] acted in an obviously

erroneous, arbitrary, or unwarranted manner." *Id.* (internal quotation marks and citation omitted). "'This Court has repeatedly recognized that district courts have "a great deal of discretion in dismissing a juror for cause.'" *See State v. Holtsoi*, \_\_\_-NMCA-\_\_\_, ¶ 5, \_\_\_ P.3d \_\_\_ (A-1-CA-39908, Feb. 12, 2024) (quoting *State v. Wiberg*, 1988-NMCA-022, ¶ 21, 107 N.M. 152, 754 P.2d 529). A district court abuses it discretion in failing to strike a juror for cause where a juror cannot be impartial. *See Johnson*, 2010-NMSC-016, ¶ 31. "Once []partiality is established, prejudice is presumed where . . . a party is compelled to use peremptory challenges on persons who should be excused for cause and that party exercises all of his or her peremptory challenges before the court completes the venire." *Holtsoi*, \_\_\_-NMCA-\_\_\_, ¶ 5 (internal quotation marks and citation omitted). Here, the burden fell on Defendant to prove that Juror 6 could not be impartial. *See Johnson*, 2010-NMSC-016, ¶ 31.

**{19}** "Excusable partiality on the part of a member of the venire is established by showing actual or implicit bias." *Holtsoi*, \_\_\_-NMCA-\_\_\_, ¶ 6. The case before us concerns an allegation of actual bias. "Actual bias is bias in fact, or the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *State v. Romero*, 2023-NMSC-014, ¶ 9, 533 P.3d 735 (internal quotation marks and citation omitted). Actual bias may be established in one of two ways; either "by an unequivocal statement or inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause." *See Holtsoi*, \_\_\_-NMCA-\_\_\_, ¶ 6 (internal quotation marks and citation omitted).

**{20}** Once "a potential juror makes a statement during voir dire that calls into question whether [they] can be fair and impartial, [a] defendant's right to the opportunity to prove actual . . . bias attaches." *Romero*, 2023-NMSC-014, ¶ 15. In simpler terms, once a potential bias is brought out during voir dire, the door is opened for a defendant to prove that the bias "would actually affect the juror's vote." *Id.* ¶ 9. After all, "[a] goal of voir dire is to uncover and investigate potential bias, and it is a mechanism for parties to clarify whether a juror's potential bias rises to the level of actual . . . bias, which would warrant excusal of the juror." *Id.* ¶ 15. We must presume that all potential jurors are "capable of impartial and fair consideration of the law and facts of the case" unless they unequivocally indicate otherwise. *See Holtsoi*, \_\_\_-NMCA-\_\_\_, ¶ 11.

**{21}** As an initial matter, Defendant's argument on appeal regarding Juror 6 is materially different from the argument that he made to the district court in his motion to strike Juror 6. Defendant moved to strike Juror 6 because of his statement that "he would give more weight to law enforcement testimony than testimony of another." Whereas, for the first time on appeal, Defendant bases his argument that the district court erred on several additional statements made by Juror 6 that were *not* mentioned in his motion to strike.[1]

---

[1] For the first time on appeal, Defendant calls attention to several additional statements made by Juror 6. Specifically, Defendant points to Juror 6's response to a question, posed to all potential jurors, asking whether they would assume Defendant had done *something* just because they saw him sitting in the

**{22}** Defendant's argument regarding these additional statements is unpreserved, *see* Rule 12-321(A) NMRA (stating "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked"), because the district court had no opportunity to rule on whether these statements constituted actual bias. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (stating "in order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon"). We decline to address the merits of Defendant's unpreserved argument regarding these additional statements because he has not asked us to apply any of the exceptions to the preservation rule set forth in Rule 12-321(B).

**{23}** Limiting our merits analysis to the statements that formed the basis of Defendant's motion to strike Juror 6, Defendant has not persuaded us that the district court abused its discretion by denying the motion. It is clear from our review of the record that Juror 6's statement that he would give more weight to the testimony of law enforcement than a lay witness, was made in agreement with another potential juror who stated they would give more weight to the testimony of law enforcement based on their level of training and experience.

**{24}** Based on the arguments presented by Defendant on appeal, we are not persuaded that Juror 6's statement rises to the level of actual bias that required the district court to disqualify Juror 6. The statement does not establish express bias because it is not "an unequivocal statement" that Juror 6 "c[ould] not be fair and impartial." *Romero*, 2023-NMSC-014, ¶ 10. Although New Mexico precedent recognizes other types of bias that may warrant disqualification of a juror for cause, *see id.* ¶¶ 11-14, Defendant has not explained why the statement at issue was sufficiently problematic—standing alone and without further factual development through voir dire questioning—to require the district court to disqualify Juror 6. Defendant has not carried his burden of establishing that the district court's refusal to disqualify Juror 6 amounted to an abuse of discretion. *See State v. Layne*, 2008-NMCA-103, ¶ 10, 144 N.M. 574, 577, 189 P.3d 707 (recognizing that the appellant bears the burden of establishing an abuse of discretion).

### III. Defendant's Sentence to One Year of Parole Must Be Vacated

**{25}** Lastly, we address Defendant's argument, made for the first time on appeal, that his sentence for one year of parole is not authorized by law. *See State v. Paiz*, 2011-NMSC-008, ¶ 33, 149 N.M. 412, 249 P.3d 1235 ("A [district court] does not have jurisdiction to impose an illegal sentence on a defendant and, therefore, any party may challenge an illegal sentence for the first time on appeal."). Specifically, Defendant contends that because he was sentenced to incarceration at a jail facility, the district

---

courtroom. Juror 6 responded that law enforcement had a reason to pull Defendant over and Defendant would not be here if law enforcement did not have enough evidence against him. Juror 6 was further asked, "Just to clarify with you, at this point you assume [Defendant] has done *something*." Juror 6 replied, "Yes." When asked if this belief would weigh on him during final deliberations, Juror 6 responded that it would.

court was not authorized to impose a period of parole. The State responds that the imposition of a one year period of parole is not improper because "the district court stated only that a one-year period of parole may be applicable in the future, not that a one year period of parole was then being imposed." We agree with Defendant.

**{26}** The district court announced Defendant's sentence at the sentencing hearing—he was sentenced to eighteen months to be served at the jail with nine months suspended. Additionally, after the completion of nine months, Defendant was sentenced to supervised probation for a period of two years. No mention of parole was made during the sentencing hearing. In the judgment and sentence, Defendant was sentenced to serve nine months in jail, rather than in the Department of Corrections. It further stated that "[a]ny period of incarceration is followed by one year of parole and two years of probation on [s]upervised probation with Adult Probation and Parole." Below the section detailing Defendant's sentence, the form stated that "Defendant, if imprisoned at any time pursuant to the above conviction in a facility designated by the Department of Corrections shall be placed on parole for [one] year(s) after release and be required to pay parole costs."

**{27}** We review the district court's application of the sentencing law de novo. *See State v. Brown*, 1999-NMSC-004, ¶ 8, 126 N.M. 642, 974 P.2d 136. Although there is language in the judgment and sentence form suggesting that the period of parole is subject to Defendant serving time in prison, we conclude that the district court erred to the extent that Defendant was sentenced to one year of parole following "[a]ny period of incarceration." Here, Defendant was clearly sentenced to serve nine months in jail rather than in prison. Pursuant to NMSA 1978, Section 31-21-10(D) (2009, amended 2023), "only prison sentences, not jail sentences, can have a parole requirement." *See id.* ¶ 12 (explaining that because the trial court "sentenced [the defendant] to jail and not to prison, parole was not authorized," reasoning that Section 31-21-10(D) discusses "parole only in relation to prison and not to jail"); *see also* § 31-21-10(D) (stating, in relevant part, "an inmate who was convicted of a first, second or third degree felony who has served the sentence of imprisonment imposed by the court in an institution designated by the corrections department shall be required to undergo a two-year period of parole"). In so concluding, we do not foreclose the possibility that Defendant may be placed on parole in the future if, pursuant to his conviction, he serves time in a facility designated as a prison. *See* § 31-21-10(D) (stating "[a]n inmate who was convicted of a fourth degree felony and who has served the sentence of imprisonment imposed by the court in an institution designated by the correction department shall be required to undergo a one-year period of parole").

## CONCLUSION

**{28}** We affirm Defendant's conviction; we vacate Defendant's one year parole term and remand for resentencing.

**{29}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**