This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: May 21, 2026**

**No. S-1-SC-40474**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MICHAEL SALINAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Mallory E. Harwood, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Ellen Venegas, Assistant Solicitor General
Santa Fe, NM

for Appellee

**DECISION**

**VARGAS, Chief Justice.**

**{1}** Defendant Michael Salinas was convicted of first-degree murder in violation of NMSA 1978, Section 30-2-1(A)(1) (1994), and three counts of shooting at or from a motor vehicle in violation of NMSA 1978, Section 30-3-8(B) (1993), with a firearm enhancement for each count of shooting at or from a motor vehicle, in accordance with NMSA 1978, Section 31-18-16 (2020, amended 2022). Defendant appeals his

convictions arguing: (1) the firearm enhancements for each of his sentences for shooting at or from a motor vehicle (a) resulted in an illegal sentence because the district court imposed a longer enhancement than was statutorily authorized for Defendant as a serious youthful offender, (b) violate double jeopardy, and (c) are unsupported by sufficient evidence; (2) his conviction must be overturned based on ineffective assistance of trial counsel; and (3) his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution.

**{2}** We affirm Defendant's convictions by nonprecedential decision. *See* Rule 12-405(B) NMRA. However, we remand to the district court for resentencing to correct the length of Defendant's three firearm enhancements. Because of Defendant's status as a serious youthful offender, the district court's authority to enhance his sentence is limited to only one year. *See* § 31-18-16(A) (2020) ("[W]hen the offender is a serious youthful offender . . . the sentence imposed by this subsection may be increased by one year.").

## I. BACKGROUND

**{3}** Defendant's convictions stem from an ongoing dispute between two high school friend groups which culminated in Defendant and four teenage boys (Victims) agreeing to meet up at a park. Defendant arrived at the park first, armed with an AR-15 rifle, and waited for Victims. As Victims drove into the park, Defendant ducked behind his car, raised his rifle over the hood, and fired sixteen shots in the direction of Victims' car. Defendant struck all four occupants in the car, killing one of them. Defendant was fifteen years old at the time of the shooting.

**{4}** Defendant was convicted of first-degree murder and three counts of shooting at or from a motor vehicle. The district court included a three-year firearm enhancement for each count of shooting at or from a motor vehicle, nine-years total, because the jury found that Defendant brandished a firearm in the commission of the crimes. The district court sentenced Defendant to a total term of fifty-four years in prison with sixteen years suspended. We provide additional facts when necessary to our analysis.

## II. DISCUSSION

### A. Firearm Enhancement

**{5}** Defendant raises three arguments regarding the firearm enhancements to his convictions for shooting at or from a motor vehicle: (1) his sentence is illegal because the district court imposed a longer enhancement than was statutorily authorized for Defendant, based on his status as a serious youthful offender, *see* NMSA 1978, § 31-18-15.2 (1996) (defining "serious youthful offender" as "an individual fifteen to eighteen years of age who is charged with and indicted or bound over for trial for first degree murder"); (2) the enhancements violate double jeopardy; and (3) the State presented insufficient evidence of Defendant brandishing a firearm.

1. **Defendant's sentence is illegal in light of his serious youthful offender status**

**{6}** "A trial court's power to sentence is derived exclusively from statute." *State v. Chavarria*, 2009-NMSC-020, ¶ 12, 146 N.M. 251, 208 P.3d 896 (internal quotation marks and citation omitted). A district court possesses inherent discretion to sentence a defendant but must do so "within the framework of our sentencing laws." *State v. Cates*, 2023-NMSC-001, ¶ 13, 523 P.3d 570. When a defendant claims that a sentence is not authorized by statute and thus illegal, our review is de novo. *State v. Brown*, 1999-NMSC-004, ¶ 8, 126 N.M. 642, 974 P.2d 136.

**{7}** As a threshold matter, the State concedes that Defendant's sentence is illegal and does not oppose remand so that the district court can correctly impose a one-year enhancement for each applicable offense, instead of the three-year enhancements imposed by the district court. Though the Court is "not bound by the State's concessions," *State v. Montoya*, 2015-NMSC-010, ¶ 58, 345 P.3d 1056, we agree that the district court applied the wrong term of years for Defendant's firearm enhancements under Section 31-18-16(A) (2020).

**{8}** Section 31-18-16(A) (2020) states that when a jury finds that a defendant "brandished a firearm in the commission of a noncapital felony, the basic sentence of imprisonment . . . shall be increased by three years, *except that when the offender is a serious youthful offender* . . . the sentence imposed by this subsection may be increased by one year." *Id.* (emphasis added). This Court recently reversed the imposition of a four-year sentencing enhancement for a serious youthful offender under Section 31-18-16 (2020), reasoning that "the district court only had statutory authority to enhance [the defendant's] sentence by one year." *State v. Revels*, 2025-NMSC-021, ¶¶ 52-53, 572 P.3d 974. *Revels* compels the same result here as Defendant was fifteen years old when he shot victims, making him a serious youthful offender. *See* § 31-18-15.2. Thus, like in *Revels*, the district court only had statutory authority to enhance Defendant's sentence by one year. 2025-NMSC-021, ¶ 53. We therefore vacate Defendant's three-year enhancements and remand for resentencing under Section 31-18-16(A) (2020), consistent with his status as a serious youthful offender. We address Defendant's remaining arguments related to the firearm enhancements in turn.

2. **Defendant's firearm enhancements for shooting at or from a motor vehicle do not violate double jeopardy**

**{9}** Defendant next contends that applying firearm enhancements to his convictions for shooting at or from a motor vehicle violates double jeopardy. Double jeopardy challenges raise questions of law that we review de novo. *State v. Lorenzo*, 2024-NMSC-003, ¶ 5, 545 P.3d 1156.

**{10}** One of the protections of the double jeopardy clause of the Fifth Amendment to the United States Constitution is the prohibition of "multiple punishments for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223 (internal quotation marks and citation omitted). There are two types of multiple punishment

double jeopardy cases: "those cases in which a defendant is charged with multiple violations of a single statute based on a single course of conduct ('unit of prosecution' cases) and those cases in which a defendant is charged with violating different statutes in a single course of conduct ('double-description' cases)." *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227.

**{11}** Defendant raises a double-description claim, arguing his convictions violate double jeopardy because he was charged with violating two different statutes: (1) Section 30-3-8 (shooting at or from a motor vehicle) and (2) Section 31-18-16 (2020) (firearm enhancement), for a single course of conduct. To determine whether Defendant was twice put in jeopardy for a single course of conduct, we apply a two-step inquiry. *See State v. Baroz*, 2017-NMSC-030, ¶ 22, 404 P.3d 769 (applying the double description analysis to determine whether a firearm enhancement to the defendant's conviction for assault with a deadly weapon violated double jeopardy). First, we determine "whether the conduct underlying the offense is unitary, i.e., whether the same conduct violates both statutes." *Id.* (quoting *Swafford*, 1991-NMSC-043, ¶ 25). "[I]f the conduct is unitary . . . we proceed to the second step . . . to determine whether the [L]egislature intended to create separately punishable offenses." *Id.*

**{12}** Under the first step, neither party disputes that the conduct underlying Defendant's convictions for shooting at or from a motor vehicle and his firearm enhancements was unitary. Although we are not bound by their concession, *Montoya*, 2015-NMSC-010, ¶ 58, we assume without deciding that the conduct was unitary and proceed to the second step.

**{13}** Under the second step, if "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court may impose cumulative punishment under such statutes in a single trial." *Baroz*, 2017-NMSC-030, ¶ 26 (text only) [1] (quoting *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983)). In reviewing previous versions of the firearm enhancement statute, this Court has held that Section 31-18-16 expressly "authorizes multiple punishments for the commission of a noncapital felony with a firearm," even if the conduct supporting the underlying offense and the enhancement is unitary. *Baroz*, 2017-NMSC-030, ¶¶ 23-27 (reviewing Section 31-18-16 (1993)); *see also State v. Griffin*, 1993-NMSC-071, ¶ 31, 116 N.M. 689, 866 P.2d 1156 ("Section 31-18-16 [(Cum. Supp. 1993)] is a clear expression that the [L]egislature intends increased punishment when a firearm is used in a robbery or burglary."). This Court reasoned that the legislative policy of Section 31-18-16 authorizes multiple punishments for noncapital crimes committed with a firearm because such crimes are "more reprehensible" than those committed without a firearm and "should be subject to greater punishment." *Baroz*, 2017-NMSC-030, ¶ 27. Therefore, this Court has held that imposing a firearm enhancement to a defendant's sentence for a noncapital felony involving the use of a

---

[1] "(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

firearm "does not run afoul of double jeopardy." *Id.*; *see also, e.g.*, *Griffin*, 1993-NMSC-071, ¶ 31.

**{14}** Defendant contends that, although the statute appears to authorize multiple punishments, the statutory language is ambiguous as to whether the enhancement applies to every noncapital felony without exception. In particular, Defendant claims the language is ambiguous as to whether the statute authorizes multiple punishments for offenses that by definition already require the use of a firearm, such as shooting at or from a motor vehicle.

**{15}** To determine whether the Legislature authorized multiple punishments for noncapital felonies necessarily committed with a firearm we first look to the plain language of the statute. *See State v. Olsson*, 2014-NMSC-012, ¶ 18, 324 P.3d 1230 ("The plain language of the statute is the primary indicator of legislative intent.").

**{16}** The 2020 version of the firearm enhancement statute states:

> When a separate finding of fact by the court or jury shows that a firearm was brandished in the commission of a noncapital felony, the basic sentence of imprisonment . . . shall be increased by three years, except that when the offender is a serious youthful offender or a youthful offender, the sentence imposed by this subsection may be increased by one year.

Section 31-18-16(A) (2020). Reviewing the plain language, we recognize that the Legislature intended for the firearm enhancement to apply when "a firearm [is] brandished *in the commission of a noncapital felony.*" *Id.* (emphasis added); *see also State v. Quintana*, 2021-NMSC-013, ¶ 12, 485 P.3d 215 ("[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)). Section 31-18-16 (2020) contains no language exempting any category of noncapital felonies from enhancement, including crimes necessarily committed with a firearm. Although the Legislature could have created such an exception, it did not do so. *See generally State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("[T]he Legislature knows how to include language in a statute if it so desires." (alteration in original) (internal quotation marks and citation omitted)). Interpreting the plain language in this manner also supports the purpose of the firearm enhancement statute: to impose greater punishment for crimes committed with a firearm because those crimes are "more reprehensible." *Baroz*, 2017-NMSC-030, ¶ 27. We therefore reaffirm that the Legislature authorized multiple punishments when a firearm is brandished during the commission of a noncapital felony. *Id.* ¶ 25 ("Section 31-18-16(A) thereby authorizes multiple punishments for the commission of a noncapital felony with a firearm."); *Griffin*, 1993-NMSC-071, ¶ 31.

**{17}** Here, Defendant was subject to three separate firearm enhancements—one for each conviction for shooting at or from a motor vehicle. Shooting at or from a motor vehicle is a noncapital felony. *See* § 30-3-8(B) (defining shooting at or from a motor

vehicle as either a fourth-, third-, or second-degree felony, based on the harm caused). Thus, similar to *Baroz* and *Griffin*, even if the conduct supporting shooting at or from a motor vehicle and the firearm enhancement was unitary, the plain language of Section 31-18-16 (2020) "authorizes multiple punishments for the commission of a noncapital felony with a firearm." *Baroz*, 2017-NMSC-030, ¶ 25; *accord Griffin*, 1993-NMSC-071, ¶ 31. As a result, applying firearm enhancements to Defendant's convictions of shooting at or from a motor vehicle does not run afoul of double jeopardy.

### 3. Sufficient evidence was presented of Defendant brandishing a firearm in the commission of shooting at or from a motor vehicle.

**{18}**   Defendant also argues that the State failed to provide sufficient evidence that he "brandished" a firearm, as required by the enhancement statute. *See* § 31-18-16(A) (2020) (requiring the jury to find that "a firearm was brandished in the commission of a noncapital felony"). In doing so, Defendant does not contest that he shot a firearm but instead claims that Victims "did not see or hear a gun before being struck with bullets." Absent evidence that Victims were aware of the presence of the gun before Defendant shot them, Defendant claims there is insufficient evidence that he displayed or made the firearm known to Victims, as required by the firearm enhancement statute. *See* § 31-18-16(D) (2020) (defining brandishing as "displaying or making a firearm known to another person . . . with intent to intimidate or injure a person").

**{19}**   In reviewing a sufficiency of evidence challenge, the Court "indulge[s] all reasonable inferences in support of the verdict, and disregard[s] all evidence and inferences to the contrary." *State v. Zachariah G.*, 2022-NMSC-003, ¶ 9, 501 P.3d 451 (internal quotation marks and citation omitted). The ultimate question becomes whether a "rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245 (internal quotation marks, citation, and emphasis omitted).

**{20}**   "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (text only) (citation omitted). Here, the jury was provided with special verdict forms requiring it to answer whether Defendant brandished a firearm in the commission of the corresponding crimes. The jury was also provided with an instruction defining brandishing in accordance with Section 31-18-16(D) (2020). Thus, the jury was asked to decide whether Defendant "display[ed] or [made] a firearm known to another person . . . with intent to intimidate or injure a person." *Id.*

**{21}**   In reviewing the record, we conclude the evidence was sufficient for a reasonable jury to conclude that Defendant brandished a firearm. At trial, Defendant testified that as Victims parked their car, he ducked behind his car, placed the firearm on his car hood, and fired multiple shots in the direction of Victims' car. Testimony from the surviving Victims and Defendant established that these where the only two cars in the parking lot and the cars were parked a few spaces apart. Given the close proximity of the cars, a reasonable jury could conclude that Defendant displayed or made the firearm known to

Victims, if not by placing the firearm on his car hood and pointing it in the direction of Victims' car, then surely by firing sixteen shots from the firearm.

**{22}** As for Defendant's intent to injure or intimidate Victims, the jury heard evidence that, prior to shooting Victims, Defendant was live on Instagram where he continuously showed the firearm used in the shooting to an audience of hundreds of followers, stating he was going to "put four [people] to rest" and "murder" the guys coming to fight him. With such evidence, a rational jury could conclude that Defendant intended to intimidate or injure Victims when he displayed or made the firearm known to them. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 52, 433 P.3d 288 ("Juries may . . . draw inferences from all the surrounding circumstances." (internal quotation marks and citation omitted)).

**{23}** Defendant claims that his use of the firearm did not meet the definition of brandishing because Victims did not see or hear the firearm before being shot. This argument fails for two reasons. First, Defendant's view of the facts is contradicted by the evidence at trial. The record shows that one victim testified that, as their car parked, he saw a person standing outside Defendant's car pull out a gun, and another victim stated that as the car parked, he heard shots. Only the driver did not see or hear the gun, as he was struck while parking the car and went unconscious.

**{24}** Second, to the extent Defendant argues that brandishing must occur *before* any discharge of the firearm, we find no support for such a temporal requirement in the firearm enhancement statute. Instead, the plain language of Section 31-18-16(A) (2020) states that the firearm must be brandished "*in the commission* of a noncapital felony," indicating that the brandishing may be contemporaneous with the noncapital felony. *Id.* (emphasis added). Thus, the jury was allowed to consider Defendant's conduct as it reasonably related to the *commission* of shooting at or from a motor vehicle, including the act of shooting itself.

**{25}** Finally, we reject Defendant's attempt to graft a subjective knowledge requirement onto the definition of brandishing by requiring a victim to actually see or hear the firearm. Defendant provided no authority to support his claim that the statute requires a victim's *knowledge* of the firearm in the context of brandishing: instead, brandishing may be accomplished by either "displaying *or* making a firearm known to another person." Section 31-18-16(D) (2020). "As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 9, 110 N.M. 314, 795 P.2d 1006. Thus, the term "displaying" stands alone as a separate possible means of brandishing. *See Territory v. McGrath*, 1911-NMSC-026, ¶ 5, 16 N.M. 202, 114 P. 364 ("If a statute makes criminal the doing of this or that or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways." (internal quotation marks and citation omitted)).

**{26}** In short, Defendant's act of placing the firearm on the hood of his car when Victims arrived readily supports a reasonable conclusion that he displayed the firearm in this case. We therefore affirm the imposition of his firearm enhancements, but we remand to the district court for resentencing to correct the length of each enhancement

from three years to one year. *See* § 31-18-16(A) (2020); *Revels*, 2025-NMSC-021, ¶¶ 52-53.

## B.     Defendant's Posttrial Motion Raising Ineffective Assistance of Counsel

### 1.     Procedural history

**{27}**     Three months after the verdict, Defendant fired his trial counsel. Defendant then hired new counsel, who filed a motion requesting findings related to ineffective assistance of counsel (IAC) over ten months after the verdict. The State responded that Defendant's motion was a request for new trial subject to the strict ten-day deadline in Rule 5-614(C) NMRA. *See* Rule 5-614(C) ("A motion for new trial based on any other grounds [than newly discovered evidence] shall be made within ten (10) days after verdict.").

**{28}**     The district court held a hearing on the motion where Defendant presented evidence of his IAC claim. At the close of the hearing, Defense counsel acknowledged the motion was a request for a new trial based on "other grounds" subject to Rule 5-614(C) and conceded the motion was filed more than ten days after the verdict. The district court agreed with the parties and dismissed the untimely motion because it was divested of jurisdiction to order a new trial. The district court also determined it was without authority to make findings related to Defendant's IAC claim and Defendant had failed to cite a procedural mechanism that would allow such findings after the posttrial motion hearing.

**{29}**     On appeal, Defendant now argues the district court erred in denying his motion for a new trial without making findings and conclusions related to his IAC claim. To remedy the asserted error, Defendant asks this Court to either (1) conclude that the record adequately establishes IAC, vacate Defendant's convictions, and remand for him to plead to second-degree murder, or in the alternative, (2) remand for the district court to enter findings of fact related to his IAC claim. We address these contentions in turn.

### 2.     The district court did not abuse its discretion by dismissing Defendant's motion without issuing findings of facts related to his IAC claim

**{30}**     We begin by reviewing the district court's dismissal of Defendant's motion pursuant to Rule 5-614(C) without making findings of fact related to his IAC claim. We review the district court's ruling on a motion for new trial for abuse of discretion. *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M 192, 185 P.3d 363. Legal questions concerning the district court's postverdict authority are subject to de novo review. *State v. Martinez*, 2022-NMSC-004, ¶ 5, 503 P.3d 313.

**{31}**     Despite Rule 5-614(C)'s clear limitation that a motion for a new trial based on any grounds other than newly discovered evidence "shall be made within ten days after the verdict," Defendant filed his motion over ten months after the verdict. As a result, the district court did not abuse its discretion by concluding it was without jurisdiction to grant Defendant a new trial. *See State v. Lucero*, 2001-NMSC-024, ¶¶ 9-10, 130 N.M. 676, 30 P.3d 365 (holding that "the filing requirement in Rule 5-614(C) is jurisdictional" and the

trial court was without jurisdiction to rule on an untimely motion for a new trial); *see e.g.*, *State v. Ortiz*, S-l-SC-36788, dispositional order (N.M. Mar. 4, 2019) (nonprecedential) (reversing the district court's grant of a motion for new trial on "other grounds" under Rule 5-614(C) because it was filed more than seven months after the jury verdict).

**{32}**    Nonetheless, Defendant argues the district court abused its discretion by concluding that it lacked authority to make findings related to his IAC claim. Defendant contends that because his motion explicitly requested an evidentiary hearing and findings related to IAC, the district court had discretion to either deny the motion outright, or, after holding the evidentiary hearing, issue findings of fact and conclusions of law for his IAC claim. Defendant asserts that once the district court conducted the hearing, any conclusion that the court lacked authority to issue findings of fact was a mistake of law amounting to an abuse of discretion. *See Sena*, 2020-NMSC-011, ¶ 15 (noting that a trial court abuses it discretion if "its discretionary decision is premised on a misapprehension of the law" (internal quotation marks and citation omitted)).

**{33}**    However, even if we concluded that the district court had the authority to issue findings of fact for Defendant's untimely posttrial IAC motion, Defendant provides no support for the exercise of this authority being mandatory. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. With no authority mandating the district court to issue findings related to Defendant's IAC claim, its refusal to do so was not a misapprehension of the law amounting to an abuse of discretion. *See Sena*, 2020-NMSC-011, ¶ 15; *cf. Montoya*, 2015-NMSC-010, ¶ 68 ("[T]he district court's misunderstanding of its authority and obligation to consider mitigating circumstances, which resulted in its failure to consider altering the basic sentence, was an abuse of discretion.")

### 3.    The record is not adequately developed to resolve Defendant's IAC claim

**{34}**    Even in the absence of findings of fact, Defendant contends that this case presents one of the rare circumstances in which either (1) the record is sufficiently developed for this Court to conclude trial counsel was ineffective without further inquiry; or (2) he has established a prima facie case of IAC warranting remand for an evidentiary hearing. *See Garcia v. State*, 2010-NMSC-023, ¶ 29, 148 N.M. 414, 237 P.3d 716 ("[D]epending on the adequacy of the record, we may either dismiss or remand an ineffective assistance of counsel claim to allow for further development of the issue before the trial court. In rare circumstances, however, the record may be sufficiently developed that an appellate court can rule on the issue without further inquiry by the trial court."); *see also State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("[A]n appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.")

**{35}**    The State responds that the record is insufficiently developed for this Court to decide Defendant's IAC claim because essential facts regarding counsel's representation—particularly as to plea negotiations—are still in dispute. *See State v. Hunter*, 2006-NMSC-043, ¶ 31, 140 N.M. 406, 143 P.3d 168 ("Where the trial court has

held an evidentiary hearing regarding counsel's effectiveness, both sides have had the opportunity to develop their positions, and *the essential facts regarding counsel's representation are not in dispute*, we believe it is inconsistent with judicial economy to require additional proceedings on this issue." (emphasis added)). The State further argues that Defendant has failed to establish a prima facie case of IAC that would warrant remand for an additional evidentiary hearing.

**{36}** Defendant's IAC claim centers on trial counsel's handling of plea negotiations and his alleged misunderstanding of the law governing a juvenile defendant's eligibility for an amenability hearing. Specifically, Defendant first claims that trial counsel's performance fell below that of a reasonably competent attorney because trial counsel did not understand that juveniles convicted of first-degree murder are not granted an amenability hearing. *See State v. Jones*, 2010-NMSC-012, ¶ 17, 148 N.M. 1, 229 P.3d 474 ("[A] serious youthful offender is not entitled to an amenability hearing because, upon conviction of first-degree murder, the child *must* receive an adult sentence."). Second, Defendant claims that trial counsel declined the possibility of a second-degree murder plea without conveying the offer to Defendant. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (holding that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution" to the defendant).

**{37}** However, the record before this Court is insufficiently developed to permit a determination of IAC without further factual inquiry. First, the limited record does not support that Defendant's trial counsel had a fundamental misunderstanding of when a serious youthful offender is eligible for an amenability hearing. Rather, trial counsel acknowledged that the nature of the convictions for a serious youthful offender determines whether the defendant is entitled to an amenability hearing. Trial counsel elaborated on discussions with another attorney, not involved in the case, on potential legal challenges to existing case law seeking to pursue an amenability hearing for a serious youthful offender, notwithstanding a first-degree murder conviction. Nonetheless, trial counsel admitted that it was an issue to be litigated and the outcome was not guaranteed.

**{38}** Second, the record does not establish whether the State actually extended a plea offer for second-degree murder, the specific terms of any such offer, or whether the State would have been willing to resolve the remaining charges. Although the record reflects that the State extended a written plea offer to *first-degree murder* with a sentencing cap of 20 years several months before trial, Defendant contends the State later discussed a possible plea offer to second-degree murder at a meeting days before trial. The State confirms the meeting, but contends that the discussion did not rise to the level of an actual plea offer for second-degree murder. Based on this unresolved factual dispute between the parties, it remains unclear whether second-degree murder was categorically "not on the table," as the State asserts, or whether the parties were open to exploring the possibility of a second-degree murder plea offer. Furthermore, the evidence is unclear as to whether the State was willing to extend any potential plea offer that would have required an amenability hearing as a matter of law. *See Jones*, 2010-NMSC-012, ¶ 48 ("[T]he trial court lacks the statutory authority to impose an adult sentence on any youthful offender without [holding an amenability hearing]." (emphasis

omitted)). Because these unresolved factual disputes go directly to Defendant's claim of IAC, we disagree with Defendant that the existing record is sufficient for this Court to resolve his claim on direct appeal. *State v. Crocco*, 2014-NMSC-016, ¶ 15, 327 P.3d 1068 ("Without an adequate record, an appellate court cannot determine that trial counsel provided constitutionally ineffective assistance.").

**{39}** Based on these unresolved factual disputes, Defendant is also unable to establish prima facie IAC on the existing record. *See Roybal*, 2002-NMSC-027, ¶ 19 ("[I]f facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition."). We therefore presume that counsel's performance was reasonable and note that Defendant remains free to raise his IAC claim in a habeas corpus proceeding. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 ("Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation."); *Hunter*, 2006-NMSC-043, ¶ 30 ("[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims." (internal quotation marks and citation omitted)).

## C.     Defendant's Sentence Does Not Constitute Cruel and Unusual Punishment

**{40}** Defendant's final contention is that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment and Article II, Section 13. Defendant did not raise this issue below; therefore, we review for fundamental error. *State v. Trujillo*, 2002-NMSC-005, ¶ 64, 131 N.M. 709, 42 P.3d 814 (reviewing a defendant's unpreserved cruel and unusual punishment claim for fundamental error).

**{41}** Defendant was sentenced to a total term of fifty-four years, with sixteen years suspended. Defendant argues this sentence is harsh for crimes committed as a juvenile and he must be given a meaningful opportunity for release. *See Ira v. Janecka*, 2018-NMSC-027, ¶ 1, 419 P.3d 161 (recognizing "a special category under the Eighth Amendment for juvenile offenders," requiring that juveniles "should receive a meaningful opportunity to obtain release by demonstrating maturity and rehabilitation"). Defendant, however, does not dispute that his sentence was authorized by law. *See Trujillo*, 2002-NMSC-005, ¶ 66 ("It is rare that a term of incarceration, which has been authorized by the Legislature, will be found to be excessively long or inherently cruel." (internal quotation marks and citation omitted)). Defendant also does not dispute that, under NMSA 1978, Section 31-21-10.2(A)(2) (2023), he may be eligible for a parole hearing in twenty years, giving him a meaningful opportunity for release. *See Ira*, 2018-NMSC-027, ¶¶ 2, 4, 39 (concluding that a defendant who was sentenced to ninety-one and one-half years as a juvenile had a meaningful opportunity for release where he would be eligible for parole at sixty-two years old and that the sentence was not unconstitutional).

**{42}** Defendant instead claims that the prison system does not adequately rehabilitate inmates to ensure they are afforded a meaningful opportunity for release; therefore, Defendant argues, there is a strong chance that he will not be granted parole because he will not have had access to the treatment necessary for his rehabilitation. This

argument is speculative, as Defendant does not identify any treatment actually being denied. *Cf. Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable [Eighth Amendment] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *State v. Augustus*, 1981-NMCA-118, ¶¶ 9-10, 97 N.M. 100, 637 P.2d 50 (holding the trial court's sentence after the defendant's heart surgery did not exhibit a deliberate indifference to his medical needs). If any specific issues regarding the lack of adequate rehabilitative treatment do arise, Defendant may seek an appropriate remedy at that time. *See Cordova v. LeMaster*, 2004-NMSC-026, ¶ 9, 136 N.M. 217, 96 P.3d 778 (explaining that an inmate may challenge their conditions of confinement by a petition for writ of habeas corpus or a civil rights lawsuit). Accordingly, we reject Defendant's contention that his sentence constitutes cruel and unusual punishment in violation of the United States and New Mexico Constitutions.

## III.    CONCLUSION

**{43}**    We affirm Defendant's convictions and remand to the district court to correct the length of the firearm enhancements in accordance with Section 31-18-16(A) (2020).

**{44}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**BRIANA H. ZAMORA, Justice**